Ernest **AVERY** et al., Plaintiffs,

v.

Margaret **HECKLER**, Secretary of Health and Human Services, Defendant.

Civ. A. No. 82–3963–G.

United States District Court, D. Massachusetts.

April 12, 1984.

Sarah Anderson, Linda Landry, Neighborhood Legal Services, Inc., Lynn, Mass.,

Laura Rosenthal, Judith Saltzman, Greater Boston Legal Services, Boston, Mass., Jack Fisher, Cambridge and Somerville Legal Services, Cambridge, Mass., for plaintiffs.

Jamie W. Katz, Asst. Atty. Gen., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

Plaintiffs, on their own behalf and ·on behalf of all others similarly situated, seek declaratory and injunctive relief against the Secretary of Health and Human Services ("the Secretary") for allegedly terminating their disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq.*, and Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*, in violation of the Act, the regulations promulgated thereunder, and the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs challenge a number of the Secretary's actions: her failure to adhere to the so-called "medical improvement" standard when terminating disability benefits; her use of a restrictive psychiatric standard for younger persons; and her failure to give adequate evidentiary weight to treating physicians' opinions, other agencies' disability determinations, and claimants' complaints of pain. Plaintiffs assert jurisdiction for their claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1361, as well as under the Act itself, 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). They have moved for class certification.

The Secretary opposes certification and has moved to dismiss the complaint primarily because the court lacks subject matter jurisdiction.

The Commonwealth of Massachusetts ("the Commonwealth") and Elmer C. Bartels, Commissioner of the Massachusetts Rehabilitation Commission,[1] have moved to intervene under Fed.R.Civ.P. 24. The Secretary opposes intervention.

The court has heard oral argument on the following motions:

1) motion by the Commonwealth to intervene;

2) motion by the Secretary to dismiss for lack of jurisdiction; and

3) motion by the plaintiffs to certify the class.

## I. *Intervention*

Regarding the motion to intervene, we conclude that the Commonwealth is entitled to intervene under Fed.R.Civ.P. 24(a)(2). Intervention of right under F.R. Civ.P. 24(a) need not be supported by an independent basis of jurisdiction. 3B *Moore's Federal Practice* ¶ 24.18. The Secretary's jurisdictional arguments present difficult legal questions, but they are applicable to the main action, not to the intervention issue. There are three prerequisites to intervention under the rule:

(1) the applicant must claim an interest relating to the property or transaction which is the subject of the action;

(2) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; and

(3) the applicant's interest would not be adequately represented by existing parties.

In her opposition papers, the Secretary argues that the Commonwealth does not satisfy prerequisites (1) and (3), apparently conceding the point with respect to prerequisite (2).

The inadequate representation requirement is satisfied when an applicant shows that "representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America,* 1972, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686. In this case the Commonwealth has an interest in minimizing the number of people

---

**1.** The Massachusetts Rehabilitation Commission, pursuant to an agreement with the Social Security Administration, 42 U.S.C. § 421(a), administers the programs by which Massachusetts residents receive disability benefits. Our references *post* to the Commonwealth refer both to the Commonwealth of Massachusetts and its officer, Commissioner Bartels.

on its public assistance rolls. The named plaintiffs share that interest only to the extent that they eventually succeed in having their disability benefits reinstated. This coincidence of interests is too evanescent to guarantee the adequate representation of the Commonwealth's interest. Should we determine that plaintiffs' benefits were legally terminated, the plaintiffs' interests and the Commonwealth's interest would become adverse. Given the minimal showing required by the rule, the representation prerequisite is satisfied.

■ The "related interest" prerequisite presents a more substantial question. The "interest" required must be direct and substantive. *United States v. Massachusetts Maritime Academy*, D.Mass.1977, 76 F.R.D. 595, 597. We conclude that the Commonwealth possesses such an interest, a proprietary interest, to which we alluded above, in minimizing the number of terminated social security beneficiaries on its welfare rolls. *See New York v. Heckler*, E.D.N.Y.1984, 578 F.Supp. 1109 at 1119–1120. This case is readily distinguishable from *Doe v. Heckler*, D.Md.1983, 568 F.Supp. 681, because it challenges terminations under Title XVI (SSI) as well as under Title II (SSDI). As the court said in *Doe,* "SSI, but not [SSDI], replaced state-administered welfare programs providing the same coverage." The legislative history of Title XVI evidences congressional intent to provide fiscal relief for state and local governments. 117 Cong.Rec. H. 21092 (June 2, 1971) (statement of Rep. Mills). Therefore, the Commonwealth's proprietary interest satisfies the "zone of interests" test recently reaffirmed by the Supreme Court in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 1982, 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700. *See New York v. Heckler, supra,* 578

F.Supp. at 1120–1122. The fact that the number of challenged Title XVI terminations is small relative to the number of challenged Title II terminations does not preclude intervention. One of the few settled principles of the law of standing is that the magnitude of a party's injury is irrelevant. *United States v. SCRAP,* 1972, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254.

Citing *Simon v. Eastern Ky. Welfare Rights Organization,* 1976, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–1926, 48 L.Ed.2d 450, the Secretary argues that the Commonwealth has not demonstrated that its injury is fairly traceable to the Secretary's allegedly illegal terminations. The chain of causation alleged by the Commonwealth, however, is not interrupted by "the independent action of some third party not before the court." *Id.* All the links of the chain are before the court: the Secretary promulgates regulations, which the Commonwealth implements, and which require the termination of benefits to some claimants, some of whom turn to the Commonwealth for financial support. This line of causation is no more attenuated than the one in *SCRAP, supra,* which the Supreme Court held sufficient to withstand a motion to dismiss.[2]

■ *Commonwealth of Pennsylvania v. Kleppe,* D.C.Cir.1976, 533 F.2d 668, *cert. denied,* 1976, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584, is distinguishable. First, the Commonwealth of Pennsylvania initiated the lawsuit. Second, nothing in the legislative history of the relevant statute indicated any concern for the well-being of states. Third, the claimed injury—a reduction in tax revenues—seemingly flowed from a generalized injury to the state's economy. To the contrary in this case, the Commonwealth seeks merely to intervene,[3]

---

**2.** Noting that *Eastern Kentucky, supra,* was in a special class of cases (tax cases), the D.C. Circuit has declined to impose in other contexts the "extremely high degree of proof of causation" demanded by the Supreme Court in that case. *Animal Welfare Institute v. Kreps,* D.C.Cir.1977, 561 F.2d 1002, 1010 n. 42.

**3.** An intervenor need not have the standing necessary to initiate the lawsuit. *United States v. Imperial Irrigation District,* 9 Cir.1977, 559 F.2d 509, *rev. and vac. on other grounds,* 1980, 447 U.S. 352, 100 S.Ct. 2232, 65 L.Ed.2d 184; *United States v. Bd. of School Comm'rs,* 7 Cir.1972, 466 F.2d 573, 577, *cert. denied sub nom. Citizens of*

there is evidence of congressional intent behind Title XVI to relieve states' financial burden, and there is a fairly direct link between the Commonwealth's economic injury and the challenged action.

The Commonwealth's right to intervene is also supported by *Kozera v. Spirito,* 1 Cir.1983, 723 F.2d 1003, recently decided by the Court of Appeals. In that case, plaintiffs sued the Commonwealth alleging that one of its AFDC eligibility requirements was illegal. The Commonwealth filed a third party complaint against the Secretary alleging that the challenged state regulation was promulgated to conform with a federal statute, 42 U.S.C. § 602(a)(31), and its implementing regulation, 45 C.F.R. § 233.20(a)(3)(xiv). The issue was whether the district court properly dismissed the Commonwealth's third party complaint. The Court of Appeals held that the Secretary was a proper third-party defendant. Its analysis, which encompassed standing, sovereign immunity and exhaustion of remedies, is applicable here. So is its invocation of the policy of judicial efficiency, which in this case is served by allowing "the adjudication of the interests of all parties—claimants, [Commonwealth], and Secretary—in one proceeding." *Id.* at 1011. Had the plaintiffs in this case sued the Commonwealth for illegally terminating their disability benefits, the Commonwealth could have brought a third-party action against the Secretary under *Kozera.* The Commonwealth's interest in this action is not diminished merely because plaintiffs chose to sue the Secretary directly. Third-party complaints and complaints in intervention are alternative procedural devices for bringing all the parties with an interest in the lawsuit before the court. *See* 3B *Moore's Federal Practice* ¶ 24.02.

For the foregoing reasons, the Commonwealth's motion to intervene is allowed.

## II. *Jurisdiction*

We turn next to the Secretary's motion to dismiss plaintiffs' complaint for lack of jurisdiction. Preliminarily we note that the Supreme Court has granted certiorari in *Heckler v. Ringer,* 1983, —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386, in order to address the same thorny jurisdictional issues raised in this suit. A comprehensive dissertation by this court at this time would serve little purpose. We have relied primarily on *Kuehner v. Schweiker,* 3 Cir. 1983, 717 F.2d 813.

The complaint alleges that the Secretary (1) fails to adhere to a medical improvement standard, (2) employs an illegally restrictive psychiatric standard for younger persons, and (3) fails to give adequate weight to treating physicians' opinions, other agencies' disability determinations and claimants' complaints of pain. The Secretary's position is that (1) First Circuit precedent does not require a medical improvement standard, (2) she does not employ a restrictive psychiatric standard for younger persons, and (3) her regulations regarding the weight to be given certain types of evidence are valid.

### A. *Medical Improvement*

First, we rule that this court has jurisdiction over plaintiffs' challenge to the Secretary's failure to adhere to a medical improvement standard when she terminates the benefits of Title II and Title XVI recipients. Jurisdiction rests on § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the waiver doctrine of *Mathews v. Eldridge,* 1976, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, · and the analysis in *Kuehner v. Schweiker, supra,*[4] which need not be re-

---

*Indianapolis for Quality Schools v. United States,* 1973, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271.

**4.** Plaintiffs also rely on 28 U.S.C. § 1361, the mandamus statute. Several Courts of Appeals have upheld the assertion of mandamus jurisdiction in similar suits involving Social Security Administration procedures. *See Lopez v. Heckler,* 9 Cir.1984, 725 F.2d 1489 at 1507–1508; *Kuehner, supra* at 819; *Ellis v. Blum,* 2 Cir.1981,

643 F.2d 68, 78–82; *Martinez v. Richardson,* 10 Cir.1973, 472 F.2d 1121, 1125. However, we do not rely on § 1361 for jurisdiction in this case. A traditional prerequisite for mandamus jurisdiction is that there be no other adequate remedy available to the plaintiffs. *Lopez v. Heckler,* at 1508. Because we believe that plaintiffs have an adequate remedy under 42 U.S.C. § 405(g), we do not decide whether mandamus jurisdiction would otherwise be appropriate here. Nor

peated in detail here. Suffice it to say that, with respect to the medical improvement issue, this case is on all fours with *Kuehner* and plaintiffs satisfy the requirements for judicial waiver of section 205(g)'s exhaustion requirement.[5] *See Kuehner, supra* at 817–18; *cf. Ringer v. Schweiker,* 9 Cir.1982, 697 F.2d 1291, 1295, *cert. granted sub nom. Heckler v. Ringer,* 1983, —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386; *Mayburg v. Heckler,* D.Mass., C.A.1983, 574 F.Supp. 922.[6]

One such requirement is that the Secretary take a final position on the contested issue. *Kuehner supra* at 817.[7] When the Secretary takes a final position on an issue, administrative exhaustion is futile and judicial review does not cause "premature interference with agency processes." *Weinberger v. Salfi,* 1975, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522. With regard to the medical improvement issue there can be little doubt that the Secretary has taken a final position, the legality of which has been and continues to be litigated in federal courts across the country. It

appears in Social Security Ruling SSR 81–6, which states:

> Where the evidence obtained at the time of a continuing disability investigation (CDI) establishes that the individual is not currently disabled or blind, a finding of cessation is appropriate. It will not be necessary to determine whether or how much the individual's condition has medically improved since the prior favorable determination.

The Secretary reaffirmed her position on the medical improvement issue when she announced her policy of nonacquiescence in a decision by the Court of Appeals for the Ninth Circuit, *Finnegan v. Matthews,* 9 Cir.1981, 641 F.2d 1340. Memorandum of February 23, 1982 from Associate Commissioner, Office of Hearings and Appeals, to all Components of the Social Security Administration. Exhibit B of Complaint. In light of this compelling evidence, two Courts of Appeals have held that the Secretary's position on the medical improvement issue is final for purposes of a judicial waiver of the exhaustion requirement. *See*

---

do we decide whether jurisdiction under 28 U.S.C. § 1331 would be appropriate. *See Cervoni v. Secretary,* 1 Cir.1978, 581 F.2d 1010, 1016 (discussing jurisdiction under § 1331 when alternative jurisdictional bases are available).

**5.** The scheme of judicial review of the Secretary's decisions is provided in sections 205(g) and 205(h) of the Social Security Act. Section 205(g) mandates an exhaustion predicate to judicial review:

> Any individual, *after any final decision of the Secretary made after a hearing to which he was a party,* irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g) (1976 & Supp. V 1981). In turn, section 205(h) establishes the exclusivity of the Act as a jurisdictional basis for review of the Secretary's actions:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No

findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (1976).

**6.** We are, of course, mindful of Justice Rehnquist's opinion in *Heckler v. Lopez,* 1983, —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431, which questions the analysis on which we rely. Justice Rehnquist did not hold, however, that the District Court was completely without jurisdiction in that case. He simply issued a partial stay *of the district court's injunction pending determination of the Secretary's appeal by the Court of Appeals for the Ninth Circuit. See Doe v. Heckler,* D.Md. M–83–2218 (Sept. 30, 1983).

**7.** When plaintiffs raise constitutional issues, which the agency has no power to decide, waiver of the exhaustion requirement is appropriate even without a final position by the Secretary. *Kuehner, supra* at 817. Because we rule that the Secretary has taken a final position on the *medical improvement issue, it is unnecessary to characterize plaintiffs' claims as either statutory or constitutional.

*Lopez,* 725 F.2d at 1503; *Kuehner, supra* at 818. We reach the same conclusion.[8]

■ The Secretary argues that judicial waiver is appropriate only where the unexhausted claim is collateral to the substantive claim of entitlement. *Eldridge, supra,* 424 U.S. at 330, 96 S.Ct. at 900; *Caswell v. Califano,* 1 Cir.1978, 583 F.2d 9, 14; *but see Kuehner, supra* at 818 (rejecting collaterality requirement). A claim is collateral when it challenges the procedures and standards under which disability determinations are made rather than the determinations themselves. Presumably a collateral claim is not covered by Section 205(g) and need not be routed through the administrative process. Assuming such a requirement is applicable in this case, *see Mayburg, supra,* 574 F.Supp. at 926, we conclude that plaintiffs' medical improvement claim satisfies the collaterality test. The test essentially requires us to determine whether a decision on plaintiffs' medical improvement claim would amount to a ruling on the merits of their underlying claims for benefits or merely on the standards that the Secretary must apply in ultimately making those determinations. *Mayburg,* 574 F.Supp. at 962. Should plaintiffs prevail on their medical improvement claim, the Secretary still will be at liberty to terminate all payments upon finding the requisite improvement. *Lopez,* 725 F.2d at 1501 n. 11; *Kuehner, supra* at 823 (Becker, J. concurring); *Hyatt v. Heckler,* W.D.N.C.1984, 579 F.Supp. 985 at 997–998. Therefore plaintiffs' claim is collateral.

. The last requirement for waiving the exhaustion requirement is substantial hardship. *Kechijian v. Califano,* 1 Cir.1980, 621 F.2d 1, 5. It truly is beyond debate that requiring plaintiffs to exhaust all levels of administrative review before filing suit would cause them great hardship, and possibly irreparable harm. In *Lopez, supra,* the district court found that "many of the plaintiffs, deprived of the very means with which to live, have either died or suffered further illness as a result of the [Secretary's failure to adhere to a medical improvement standard]." 725 F.2d at 1493. As Judge McMillan stated in *Hyatt,* 579 F.Supp. at 995:

> The termination and the unjustified denial of Social Security disability benefits cause irreparable harm to eligible persons. Many become unable to pay for medicines, clothing, food, fuel, transportation and shelter. Termination and denial of benefits cause anxiety, depression and decline in health. Some former recipients have died following termination of benefits; posthumous reinstatement after appeal doesn't help them.

The substantial hardship requirement is clearly satisfied.

■ For the foregoing reasons, with respect to the medical improvement issue, we rule that requiring plaintiffs to exhaust their administrative remedies would serve no useful purpose and that we have jurisdiction over the claim.[9]

---

**8.** Exhaustion of administrative remedies by plaintiffs Phillips and May constitutes further evidence that the Secretary has taken a final position on the medical improvement issue. *See Kuehner, supra,* at 818; *Mayburg,* 574 F.Supp. at 926. *Wilson v. Secretary of Health and Human Services,* 1 Cir.1982, 671 F.2d 673, cited by the Secretary, is distinguishable because it involved a lone plaintiff who did not exhaust her administrative remedies. Thus the Secretary never had the opportunity in that case to take a final position on the challenged regulation.

**9.** The Secretary relies on *Smith v. Schweiker,* 2 Cir.1983, 709 F.2d 777, which required exhaustion of a medical improvement claim similar to the one in this case. The Second Circuit Court of Appeals ruled that plaintiffs' claim was not collateral, that exhaustion would not be futile, and that claimants would not suffer irreparable harm. It appears to us that *Smith* is directly at odds with *Lopez, supra, Kuehner, supra,* and *Hyatt, supra.* Furthermore, *Smith* reaffirms *Jones v. Califano,* 2 Cir.1978, 576 F.2d 12, which waived the exhaustion requirement under circumstances that are present here. In *Jones* there was internal disarray within the Social Security Administration such that terminations by the Secretary were routinely reversed by the Appeals Council, which was applying a different, more lenient, disability standard. In the present case plaintiffs allege that "a very high percentage" (estimated at 75%) of the Secretary's terminations are reversed by the ALJs, who apply the more lenient "medical improvement" disability standard. *Cf.* N.Y. Times, March 24, 1984, at 1, col. 6. (Of 470,000 people

## B. *Psychiatric Claimants*

 We turn next to whether we have jurisdiction over plaintiffs' claim that the Secretary has implemented an illegal psychiatric standard for younger persons. Plaintiffs' claim is as follows: when a younger worker (age 18–49) has a mental impairment that is not as severe as those contained in the Listing of Impairments,[10] he is presumed capable of performing at least unskilled work. According to the plaintiffs, no individual consideration is given to claimants' physical and mental limitations to determine whether the person actually can hold down a job, as is required by the Act and the Secretary's own regulations. 20 C.F.R. §§ 404.1520(e) and 406.-920. Identical claims have been successfully litigated elsewhere. *See Mental Health Association v. Heckler,* 8 Cir.1983, 720 F.2d 965; *New York v. Heckler, supra.*

The Secretary raises essentially the same jurisdictional objections to this claim as she raised to plaintiffs' medical improvement claim. Our analysis also is similar. First, we rule that the Secretary has taken a final position on the challenged psychiatric standard for purposes of exhaustion. In *Mental Health Association* the district court's finding that the Secretary had taken a final position was supported by the Secretary's own documents, agents and witnesses. 720 F.2d 965, 970 n. 14. In *New York v. Heckler,* Judge Weinstein found that "evidence of the fixed clandestine policy against those with mental illness is overwhelming." 578 F.Supp. 1115. In light of these cases,

we believe plaintiffs' allegations of a restrictive psychiatric standard are adequately supported. *O'Toole v. Arlington Trust Co.,* 1 Cir.1982, 681 F.2d 94, 98.[11]

We also rule that plaintiffs' claims are collateral to their demand for benefits. *See Mental Health Association, supra; New York v. Heckler, supra.* They challenge the Secretary's *procedures* by which termination decisions are made. Should plaintiffs prevail on the merits, the Secretary still will be at liberty to terminate all payments if, after considering a claimant's individual physical and mental limitations, she determines that the claimant is no longer disabled.

Plaintiffs also satisfy the substantial hardship requirement with respect to their psychiatric claim. As the district court in *Mental Health Association* observed:

[C]lass members who have been denied benefits or have had benefits terminated have suffered serious harms such as deterioration of their medical conditions, disruption of physician-patient relationships, inability to pay for essential medications, and agitation and extreme anxiety associated with attempting to pursue the administrative process. These harms concern the very medical condition on account of which benefits were awarded or are sought. These harms are not recompensable through a retroactive award of benefits.

720 F.2d at 970; *see also New York v. Heckler,* 578 F.Supp. at 1118.

---

removed from disability rolls nationwide since March 1981, 160,000 have been reinstated after appeal and 120,000 have appeals pending). At this early stage of the litigation, plaintiffs allegations must be taken as true. *Kuehner, supra,* at 815. Putting aside the question whether jurisdiction should turn on such circumstances, we conclude that this case is more like *Jones* than *Smith.* To the extent our opinion today is inconsistent with *Smith,* we decline to follow it.

**10.** 20 C.F.R. § 404, subpart P, appendix 1 (1981). The Listing of Impairments is a compendium of conditions and symptoms that reflect a level of severity which the Secretary concedes is disabling without further inquiry. *Mental Health Association v. Heckler,* 8 Cir.1983, 720 F.2d 965, 967 n. 4.

**11.** Normally, plaintiffs' allegations of an illegal psychiatric standard would be taken as true for purposes of the Secretary's motion to dismiss. The Secretary, however, stated in a sworn answer to an interrogatory that she "has not adopted any final position on an allegedly restrictive standard for evaluating the continuing disability of younger workers with mental impairments." This placed the burden on plaintiffs to produce some evidence to support their claim. We rule that plaintiffs may rely on the findings in *Mental Health Association, supra,* and *New York v. Heckler, supra,* to satisfy that burden.

Therefore, with respect to plaintiffs' claim of an illegally restrictive psychiatric standard for younger persons, the exhaustion requirement of § 405(g) has been waived and this court has jurisdiction over the claim.

### C. *Other Claims*

■ With respect to plaintiffs' challenge to the weight the Secretary gives to treating physicians' opinions and other agencies' disability determinations, we reach the opposite result, finding that this court lacks jurisdiction. The Secretary has promulgated regulations on these two issues, *see* 20 C.F.R. § 404.1504, 404.1527, 416.904, 416.927, but plaintiffs seem not to challenge the regulations themselves. Rather they object to the Secretary's "directives" and "policies" that allegedly preclude compliance with certain unspecified court holdings on these two issues.[12] This mode of attack, we believe, fails the test for waiving the exhaustion requirement. The Secretary's final position on these two issues is embodied in her regulations, not some vague "policy" or "directive."[13] Furthermore, whether or not the Secretary gives "proper" weight to these pieces of evidence will depend on how the regulations are interpreted in the case of each individual claimant. This is the gist of the typical individual Social Security case in federal court: presumably valid regulations are allegedly misapplied in the administrative process. Since plaintiffs' challenge is not to the regulations themselves, but essentially to how the regulations are applied, the challenge is not collateral to their underlying claims for benefits. Waiver is therefore inappropriate. Moreover, disputes about the proper weight to be given certain evidence inevitably entail factual as well as legal inquiries. Such disputes are better resolved "in the context of a concrete case, developed in the review process, with a factual record setting out the reasons for the prior ruling and subsequent termination than when posed in the abstract." *Smith v. Schweiker, supra* at 780; *but see Kuehner, supra* at 823 (treating physician issue held collateral) (Becker, J., concurring); *Rivera v. Heckler*, D.N.J. 1983, 568 F.Supp. 235 (same).

■ Plaintiffs' challenge to the Secretary's failure to give adequate weight to claimants' complaints of pain stands on a different footing. Here plaintiffs' challenge is clearly directed at two regulations: 20 C.F.R. §§ 404.1529 and 416.929.[14] Plaintiffs contend that the regulations themselves are inconsistent with the cases such as *Miranda v. Secretary*, 1 Cir.1975, 514 F.2d 996, *Smith v. Califano*, 3 Cir.1981, 637 F.2d 968, and *Myers v. Califano*, 4 Cir.1980, 611 F.2d 980. Since the regulations embody the Secretary's final position, and since the collaterality and substantial

---

**12.** Paragraph 45 of the First Amended Complaint states:

[Massachusetts] pursuant to the policies and directives of the Secretary may not give substantial adjudicative weight to the opinions of treating physicians on the ultimate question as to whether a claimant is disabled.

Paragraph 48 states:

The Secretary, through her regulations and policies, has directed [Massachusetts] not to give proper adjudicative weight to the determination by another agency that a claimant is disabled, or even to a determination of disability made by a different division of its own agency.

**13.** Of course, if there were evidence that the Secretary consistently disregarded her published regulations and pursued a different, unwritten policy, plaintiffs could challenge that policy as the Secretary's *de facto* final position and

might obtain a waiver of the exhaustion requirement. There is no such evidence, however.

**14.** The regulations read:

If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.

hardship tests are satisfied for the reasons previously stated, waiver is appropriate.

To reiterate, the Secretary's motion to dismiss is denied with respect to the medical improvement, psychiatric standard, and complaint of pain issues. With respect to the claims against the Secretary regarding the proper weight to be given treating physicians' opinions and other agencies' disability determinations, the motion to dismiss is allowed.

### III. *Class Certification*

■ Plaintiffs seek to maintain this suit as a class action under F.R.Civ.P. 23(b)(2). The Secretary opposes certification on the grounds that plaintiffs have failed to satisfy the requirements of Rule 23. For reasons discussed below, we rule that the requirements of Rule 23 are satisfied with respect to the medical improvement issue.[15] We therefore certify the following class:

> All SSI and SSDI beneficiaries residing in Massachusetts who have been or are receiving disability benefits and who, having presented claims of continuing disability, have been or will be disqualified from receiving benefits as a result of the Secretary's failure to adhere to a medical improvement standard when

evaluating claims of continuing disability.

■ There are four threshold requirements under Rule 23(a). First, the class must be so numerous that joining all members is impracticable.[16] Plaintiffs' putative class satisfies the requirement. The class includes approximately 8600 Massachusetts residents who were disqualified from receiving disability benefits since fiscal year 1980. These individuals are poor and handicapped. It is fancy to expect them to initiate and prosecute 8600 individual lawsuits.[17] Second, there must be a common question of law or fact. Plaintiffs' class also satisfies this requirement, because by definition all class members challenge the Secretary's failure to apply a medical improvement standard. Rule 23 also requires that the named plaintiffs' claims are typical of the class members' claims.[18] The requirement is satisfied because the named plaintiffs' challenges to the Secretary's position on the medical improvement issue are identical to the challenges of the class members on that issue.[19]

Finally, Rule 23 requires that the named plaintiffs fairly and adequately protect the

---

**15.** Rule 23(c)(4)(A) authorizes class actions with respect to particular issues.

**16.** The numerosity requirement is relaxed when plaintiffs seek only injunctive and declaratory relief. *Westcott v. Califano,* D.Mass.1976, 460 F.Supp. 737.

**17.** The Secretary's argument that the class is not too numerous is based on her assumption that class members must previously have exhausted their administrative remedies. Because we waived the exhaustion requirement for three of plaintiffs' five claims, *ante,* the Secretary's assumption is incorrect.

**18.** The Secretary contends that the claims of five named plaintiffs are moot because their benefits were restored on appeal. We pause here only to note the practical irrelevance of this issue. If these plaintiffs' claims are, as they claim, "capable of repetition yet evading review," the plaintiffs are entitled to pursue their individual claims, *Gerstein v. Pugh,* 1975, 420 U.S. 103, 110, 111 n. 11, 95 S.Ct. 854, 861, 861 n. 11, 43 L.Ed.2d 54. If the claims are moot, these plaintiffs simply recede into the class and enjoy

the protection afforded recipients who are terminated in the future, *see Mayburg, supra* at 928. The mootness question addressed in *Lessary v. Atkins,* 82–3389–MA (Dec. 27, 1983), to which plaintiffs have directed our attention, is not present in this case. In *Lessard,* the single named plaintiff's individual claim was mooted prior to class certification; in the instant case there are at least six named plaintiffs whose individual claims are not moot.

**19.** The Secretary asserts that plaintiffs Corrado Laconte and Carol Laconte do not challenge the lack of a medical improvement standard. Plaintiffs contend that they do. *Compare* Defendant's Memorandum in Opposition to Plaintiffs' Motion for Class Certification, Appendix B *with* Plaintiffs' Reply Memorandum in Support of their Motion for Class Certification, Appendix Y. The First Amended Complaint does not allege that the Secretary terminated Corrado Laconte's benefits without first demonstrating medical improvement, as it does with respect to the nine other named plaintiffs. For purposes of the class certification motion, however, we accept plaintiffs' representation and assume the Lacontes' claims are typical of the claims of the class.

interests of the class. That requirement also is satisfied. We discern no antagonism of interests between the named plaintiffs and the class members, *Senter v. General Motors Corp.*, 6 Cir.1976, 532 F.2d 511, 525, and we are confident that plaintiffs' counsel will competently and vigorously prosecute the rights of the class. *Id.*[20]

■ We deny plaintiffs' certification motion with respect to the psychiatric standard and evidence of pain issues. Those issues are completely separate from the medical improvement challenge. Only five of the eleven named plaintiffs challenge the pain regulation; only one (a claimant and his wife) challenges the psychiatric standard. A class definition encompassing these claims, as proposed by plaintiffs, would exceed the limits of Rule 23. *See Smith v. Schweiker, supra* at 784.[21] The psychiatric standard and evidence of pain issues might provide a basis for dividing the certified class into subclasses under F.R.Civ.P. 23(c)(4)(B). However, any subclass formed must itself meet all the requirements of a class action. *Officers for Justice v. Civil Comm. of San Francisco*, 9 Cir.1982, 688 F.2d 615, 630. And plaintiffs have not demonstrated that such subclasses would satisfy the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy of representation. The burden of constructing subclasses is on the plaintiffs, not the court. *United States Parole Com'n v. Geraghty*, 1980, 445 U.S. 388, 408, 100 S.Ct. 1202, 1214, 63 L.Ed.2d 479. The named plaintiffs must therefore litigate their claims on these two issues on an individual basis.

■ Once we determine that the four threshold requirements of Rule 23(a) are satisfied with respect to the medical improvement issue we must turn to the requirements of Rule 23(b). The class we have certified satisfies Rule 23(b)(2), which allows class certification if

... the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Plaintiffs' class, as defined by the court, satisfies the rule because the Secretary's failure to adhere to a medical improvement standard when terminating plaintiffs' benefits constitutes "grounds generally applicable to the class." The Secretary's arguments concerning Rule 23(b)(2) were directed at plaintiffs' proposed class, which was much larger and more diverse than the one we have certified.

The class description includes persons who have not yet presented claims of continuing disability but will do so in the future, and whose benefits will be terminated if the Secretary continues to adhere to her position on the medical improvement issue. This mechanism for extending the class so as to include future claimants was employed recently by Judge Keeton. *See Mayburg v. Heckler, supra.* As there noted, a class that includes future claimants is especially appropriate in light of the Secretary's policy of non-acquiescence in judicial decisions with which she disagrees. 574 F.Supp. at 928, 931–932. Given the Secretary's handling of the medical improvement issue, *see Lopez v. Heckler, supra*, and despite indications that the Secretary's policies soon may change, N.Y. Times, March 24, 1984, at 1, col. 6 ("Under pressure from the courts, state governments and Congress, the Reagan Administration has tentatively decided to stop reviewing and cutting off Social Security disability benefits for 18 months"), we find it essential to include future claimants in the class description.

### IV. *Summary*

Summarizing the court's rulings, the motion by the Commonwealth to intervene is

---

**20.** The Secretary's argument on the adequacy of representation again is based on the erroneous assumption that each class member must fully exhaust his administrative claim.

**21.** Plaintiffs' proposed class consisted of all SSDI and SSI beneficiaries residing in Massachusetts whose benefits have been or will be terminated since March 1981.

allowed; the motion by the Secretary to dismiss for lack of jurisdiction is denied with respect to the medical improvement, psychiatric standard and complaint of pain issues and is allowed with respect to the issues of treating physicians' opinions and other agencies' disability determinations; the motion by plaintiffs for class certification is allowed with respect to the medical improvement issue and is denied with respect to the issues of younger psychiatric claimants and complaints of pain.