**Ernest E. AVERY, et al.,
Plaintiffs, Appellees,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellant.**

**No. 85–1135.**

United States Court of Appeals, First Circuit.

Heard March 5, 1985.

Decided May 17, 1985.

Carolyn B. Kuhl, Deputy Asst. Atty. Gen., Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., William F. Weld, U.S. Atty., Patti B. Saris, Asst. U.S. Atty., Boston, Mass., and William Kanter and Deborah Ruth Kant, Civ. Division-Appellate Staff, Washington, D.C., were on brief for appellant.

Judith Saltzman, Greater Boston Legal Services, Boston, Mass., with whom Sarah Anderson, and Linda Landry, Neighborhood Legal Services, Lynn, Mass., Laura Rosenthal, Boston, Mass., Massachusetts Law Reform Institute, and Jack Fisher, Cambridge & Somerville Legal Services, were on brief, for appellees.

Jamie W. Katz, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief for Com. of Mass.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Plaintiffs in this case are a class of Massachusetts residents who have received federal social security benefits for disabled people, *see* 42 U.S.C. §§ 401 *et seq.* (Social Security Disability Insurance); *id.* §§ 1381 *et seq.* (Supplemental Security Income). They sued the Secretary of Health and Human Services, claiming, among other things, that the Secretary was using an improper standard when deciding whether to continue or discontinue payment of disability benefits to a person already receiving them. They said the Secretary, at least sometimes, when deciding the 'continuation' question, would in effect reopen the question of whether the person had been disabled in the first place. The Secretary would then re-examine the initial disability decision, perhaps inferring from the same set of facts (in close cases) that the person had not ever been disabled and then denying the person continued benefits. Instead, plaintiffs argued, the Secretary ought to apply a "medical improvement" standard—a standard that would typically require continued payment in the absence of a medical *change* for the better. The Secretary used to apply this "medical improvement" test uniformly before the mid-1970's; then the Secretary changed to a stricter test allowing a type of *de novo* re-examination of disability. And, plaintiffs argued, the stricter '*de novo* re-examination' test is unlawful.

In October 1984 while this suit was pending, Congress enacted a new law, the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794. The new law now requires the Secretary to use a more liberal "medical improvement" test when she decides whether to continue or discontinue disability benefits that are currently being paid. Congress was aware that many former recipients were currently challenging in the courts the lawfulness of

the Secretary's stricter *de novo* re-examination policy and that several class actions had been filed. The new law said that judges with such cases before them should remand them to the Secretary and that the Secretary, where appropriate, should reconsider whether plaintiffs' benefits should continue, applying the liberal "medical improvement" standard when doing so. *Id.* § 2(d).

After passage of the law, the district court made three decisions in this case that are the subject of this appeal. First, it re-examined its earlier definition of the relevant class of plaintiffs—a class it had defined as:

> [a]ll SSI and SSDI beneficiaries residing in Massachusetts who have been or are receiving disability benefits and who, having presented claims of continuing disability, have been or will be disqualified from receiving benefits as a result of the Secretary's failure to adhere to a medical improvement standard when evaluating claims of continuing disability.

*Avery v. Heckler,* 584 F.Supp. 312, 322 (D.Mass.1984). The court denied the Secretary's motion to limit the class to persons whose claims the Secretary had denied after March 1, 1981. It made clear that the class extended to those persons described whose benefits the Secretary had terminated any time after June 1, 1976. Second, the court denied the Secretary's motion to dismiss the action. It remanded the claims of the class members to the Secretary while maintaining jurisdiction over the case. Third, the court examined the notice the Secretary proposed to send to members of the class—a notice telling them that they might be entitled to re-examination of a termination decision under the more liberal "medical improvement" test (and that they might be able to receive interim benefits under section 2(e) of the new Act pending re-examination). The court decided that the Secretary's notice was less clear than the notice that plaintiffs' counsel proposed, and it ordered the Secretary to send plaintiffs' counsel's notice instead. 599 F.Supp. 236 (D.Mass.1984). The court also ordered the parties to follow certain related procedures for determining who is, and who is not, a member of the class.

The Secretary has appealed from these district court determinations. She asked us for a stay pending appeal, which we granted in part on February 13, 1985, because we were uncertain of the merits of her 'class definition' argument. After full briefing and oral argument in this court, we concluded that the district court's decisions were legally correct, and on March 21, 1985 we dissolved the stay. We shall explain here the basis for our conclusion.

■ 1. At the outset we note that plaintiffs contend that the relevant district court orders are not now appealable. We agree with the Secretary, however, that at least one set of the orders is equivalent to an injunction and therefore appealable under 28 U.S.C. § 1292(a)(1), which gives us jurisdiction to hear appeals from:

> [i]nterlocutory orders of ... district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

Here, the district court ordered the Secretary to issue certain specific notices and to follow certain set procedures for determining class membership. To determine whether these orders are of the sort to justify interlocutory review, we must examine their "substantial effect" rather than their terminology. *United States v. Cities Service Co.,* 410 F.2d 662, 663 n. 1 (1st Cir.1969); *United States v. Alcon Laboratories,* 636 F.2d 876, 881 (1st Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981).

First, we note that the orders in question compel affirmative agency conduct, impose at least some burden upon the Secretary, and are enforceable by contempt sanctions. *See* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure: Jurisdiction* § 3922 (1977). Second, these orders are not purely "a matter of [litigation] procedure rather than remedy,"

*id.,* for the district court's decision to impose these orders instead of dismissing the case outright is reasonably viewed as deciding what substantive relief the new Act affords. *Compare Polyplastics, Inc. v. Transconex, Inc.,* 713 F.2d 875, 880 (1st Cir.1983). Third, by the time the district court enters a final order terminating this litigation, the 'notice' and 'procedure' questions may well be moot and therefore evade appellate review. See *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955) (purpose of § 1292 was to "permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence"). In sum, both as a matter of form and in terms of the purposes of section 1292(a), we believe it proper in the context of this litigation to treat the 'notice' and 'procedure' orders as injunctive relief that is appealable on an interlocutory basis. *See generally* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *supra,* §§ 3920–24.

We need pursue this jurisdictional matter no further, for appeal of the 'notice' and 'procedure' orders is, in effect, an appeal of all the central issues of the case. These orders are legally proper in their entirety only if 1) the class may be defined to include persons whose disability payments the Secretary terminated between June 1976 and March 1981; *and* 2) the new 1984 law does not require the court to dismiss the case; *and* 3) the court has the legal power to issue these particular orders requiring certain notice and membership-determining procedures. ·Our decision that these orders are legally proper means that the Secretary would lose any appeal separately challenging the district court's decision about class membership or its decision not to dismiss the case. Hence, there is no need to determine separately the appealability of the orders encompassing those decisions. *See Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798, 808–09 (5th Cir.) (interlocutory review of class definition appropriate when contours of class composition shape contours of injunctive relief), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982); *Kershner v. Ma-*

*zurkiewicz,* 670 F.2d 440, 448–49 (3d Cir. 1982) (same); *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 287, 61 S.Ct. 229, 232, 85 L.Ed. 189 (1940) (denial of motion to dismiss may, in appropriate cases, be reviewed by appellate court in § 1292(a)(1) appeal of injunctive relief); *see generally* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *supra,* § 3921 (§ 1292(a)(1) review "quite properly extends to all matters inextricably bound up with the remedial decision").

■ 2. The Secretary argues that the district court lacked the legal power to include within the class of plaintiffs persons whom the Secretary removed from the disability rolls between June, 1976 and March, 1981. The relevant legal standard is contained in section 2(d)(3) of the 1984 Act, which says that "the court shall remand ... to the Secretary" the "case" of a person whose disability payments were terminated and who

was a member of a class certified on or before September 19, 1984, in a class action relating to medical improvement pending on September 19, 1984, but was not identified by name as a member of the class on such date.

The main issue here is simply whether the class definition—which the district court certified on April 12, 1984—included persons whose benefits were terminated between 1976 and 1981. The district court, which is of course in the best position to know what the original April 12 certification meant, held that it did include 1976–81 members. We find that conclusion adequately supported for the following reasons.

First, the language of the April 12 certification, as read naturally, includes 1976–81 persons. The language, which we have set out in full, *supra,* p. 160, refers, not to date, but to cause of termination. It says that the class shall include *"[a]ll"* Massachusetts social security beneficiaries whose benefits were terminated because of the Secretary's failure to use a "medical improvement" standard. *Avery v. Heckler,*

584 F.Supp. at 322 (emphasis added). If there are persons who were disqualified between 1976 and 1981 and who would not have been disqualified under a "medical improvement" test, the certification would seem to apply to them.

Second, the plaintiffs have made a strong showing that indeed there are such persons. They refer to the Secretary's answers to interrogatories. And, they point to public Congressional testimony, such as that of a General Accounting Office representative who told a House Ways and Means Subcommittee that the "medical improvement requirement was dropped administratively in June, 1976." He estimated that about one-third of all terminations involved "beneficiaries who had not medically improved"—a fact that leads plaintiffs' counsel to estimate that over 2,000 persons terminated between 1976 and 1981 fall within the class definition.

Third, the Secretary herself in the district court seemed to think that the original April 12 certification included 1976–81 persons. After passage of the new Act, she filed a motion entitled, "Motion to Alter or Amend the Definition of the Class." As this title and the district court's written decision in response make clear, the Secretary was asking the court to *remove* 1976–81 claimants from the class. The court, in denying this motion, did not "enlarge" the class. (And we believe the Secretary's argument in her briefs here, to the effect that the district court "enlarged" the class *after* September 19, 1984, misstates what the district court believed it had decided.) The fact that, as we have previously said, there may well be 1976–81 claimants who fit the class definition makes their inclusion, and the court's requirement that notice be sent them, perfectly reasonable and appropriate.

Fourth, at least two other courts have included 1976–81 persons within the definition of their "medical improvement" class, *see Schisler v. Heckler,* Civ. No. 80–572E (W.D.N.Y. Feb. 15, 1985) (denying Secretary's motion to alter class starting date of June 1, 1976); *Kuehner v. Heckler,* C.A. No. 82–1839 (E.D.Pa. Feb. 26, 1985) (same).

The Secretary's arguments against inclusion of 1976–81 claimants depend heavily upon the fact that the plaintiffs themselves in papers filed in the district court at times seemed to speak of the class as including only persons terminated after 1980. But, that fact is not determinative. Imagine, for example, that a court certifies a class of all IBM shareholders. The fact that plaintiffs' attorney happens to think that no IBM shareholders live in Quincy would not automatically exclude Quincy residents from the class if some of them turn out to own IBM shares. Plaintiffs' papers may simply reflect the fact that the 1976–81 class members were a late discovery.

Next, the Secretary argues that the 1976–81 terminations involve 'diaried' reviews instead of 'periodic' reviews. Apparently, a 'diaried' review involves a person whom the Secretary thought initially might get better; a 'periodic' review includes all beneficiaries. But we fail to see the relevance of the Secretary's point; she makes no convincing argument why this distinction makes any relevant difference. (Indeed, the Secretary herself concedes that 'diaried' review claimants whose benefits were terminated *after* March 1981, are appropriate class members alongside 'periodic' review claimants.) Thus, we cannot say that the district court abused its discretion under Fed.R.Civ.P. 23(b) in fashioning a class that includes "[a]ll" 'periodic' review and 'diaried' review claimants whose benefits were terminated under the same substantive eligibility test.

Finally, the Secretary points to statements in the legislative history of the new Act suggesting that some members of Congress may have thought the pending class suits involved only post-1980 plaintiffs. *See, e.g.,* 130 Cong.Rec. H9828 (daily ed. Sept. 19, 1984) (Conference Agreement referring to controversy created by 'periodic' review); S.Rep. No. 466, 98th Cong., 2d Sess. 6 (1984) (noting problems created by 'periodic' review); H.R.Rep. No. 618, 98th Cong., 2d Sess. 10–11 (1984) (same), U.S.

Code Cong. & Admin.News 1984, p. 3038. The history of the Act, however, shows still more clearly that in respect to class membership, Congress took the class action suits as it found them, for it was Congress's intent to *"resolve* the *existing* controversy over the medical improvement issue *in the courts* "—and such a resolution could only happen if the new Act applied to *"all* claimants who are members of [currently certified] class actions." 130 Cong. Rec. H9828, *supra* (emphasis added); *see also* 130 Cong.Rec. S11452, 11454 (daily ed. Sept. 19, 1984) (remarks of Senator Dole) (discussing need to resolve pending court cases and pointing out that members of existing certified classes might have formed "reasonable expectations ... that they would receive further review of their cases"). And when making the decision to accept the existing judicial certifications of class membership, Congress had before it General Accounting Office testimony that the Secretary abandoned the medical improvement standard in June, 1976, *see supra*, p. 162. Moreover, we doubt the need to refer to legislative history, for we see no ambiguity whatsoever in the words of the new Act itself. *See Ciampa v. Secretary of Health and Human Services*, 687 F.2d 518, 525 (1st Cir.1982) ("a statute's scope can extend beyond the particular examples used by legislators in debate"). The new Act does not distinguish between 'diaried' review and 'periodic' review claimants, or between pre-1981 and post-1981 claimants, but simply applies to any "member of a class certified on or before September 19, 1984, in a class action relating to medical improvement pending on September 19, 1984." Pub.L. No. 98–460, *supra*, § 2(d).

 3. The Secretary argues that the 1984 statute required the district court to dismiss the action, and prohibited it from retaining jurisdiction. The conclusive answer to this argument, however, is that the Act says the court shall "remand" the case, *id.* ; it does not say the court must dismiss the action. Generally, a remand order is an interlocutory order that does not divest a court of jurisdiction over a case. *Zam-*

*brana v. Califano*, 651 F.2d 842, 844 (2d Cir.1981) (remanding court is "vested with equity powers" and "may adjust its relief to the exigencies of the case in accordance with ... equitable principles") (citing *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939) ). And absent a clear statement to the contrary, legislation should not ordinarily be interpreted to oust a federal court's equitable power, or its jurisdiction over a pending case. *See Califano v. Yamasaki*, 442 U.S. 682, 705–06, 99 S.Ct. 2545, 2559–60, 61 L.Ed.2d 176 (1979); *cf.* Van Alstyne, "A Critical Guide to *Ex Parte McCardle*," 15 Ariz.L.Rev. 229 (1973). Moreover, the Supreme Court has specifically said, in remand orders in two other "medical improvement" class actions, that the lower courts are to "remand" to the Secretary and "take other actions appropriate in light of [the new] Act"—a superfluous instruction if only dismissal were appropriate. *Heckler v. Lopez*, —— U.S. ——, 105 S.Ct. 583, 584, 83 L.Ed.2d 694 (1984); *Heckler v. Kuehner*, —— U.S. ——, 105 S.Ct. 376, 376, 83 L.Ed.2d 312 (1984). In at least one of these cases, the Secretary's counsel, like counsel here, had specifically sought an outright dismissal instead of a remand. *See id.*, Brief for the Petitioners in Reply to the Supplemental Brief for the Respondents, at 8. *See also City of New York v. Heckler*, 755 F.2d 31, 33 n. 1 (2d Cir.1985). Further, several other courts have explicitly retained jurisdiction after remanding their class actions to the Secretary under the new Act. *See Holden v. Heckler*, No. 85–3128 (6th Cir. Feb. 15, 1985); *Lopez v. Heckler*, 753 F.2d 1464 (9th Cir.1985); *Pickett v. Heckler*, 608 F.Supp. 841 (S.D.Fla. 1985); *Thomas v. Heckler*, 602 F.Supp. 925 (M.D.Ala.1984); *see also City of New York v. Heckler, supra*. And although two appellate courts have ordered dismissals of class suits, we do not read their opinions as saying that dismissal is *always* necessary or even appropriate. *Hyatt v. Heckler*, 757 F.2d 1455 (4th Cir.1985); *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.1984).

Both *Hyatt* and *Polaski* involved district court injunctions granting greater substantive relief on the "medical improvement" merits than permitted under the new Act; and each apparently involved requests by plaintiffs that the court retain jurisdiction over individual class members' claims throughout the administrative proceedings—even after HHS redetermined their individual eligibility under the new Act's "medical improvement" standard. The *Hyatt* and *Polaski* courts rejected these requests and ordered the district courts to dismiss *after* remanding the cases under the new Act. Here, we deal with a different situation, for the district court seeks to retain jurisdiction to *implement* the procedural details of the remand itself.

Finally, a requirement of dismissal makes little sense in light of the fact that Congress knew its new legislation would include unnamed plaintiffs in several different court actions, in different procedural postures, involving classes likely defined somewhat differently one from the other, mixed up in varying degrees with other plaintiffs and other (non-medical improvement) claims. Appropriate management of the cases, to achieve Congress's legislative purposes, may well require different orders in different cases; and it may, as here, require a degree of continued court supervision of the sort that district judges are accustomed to providing in complicated class actions under Fed.R.Civ.P. 23. There is simply no reason to read into the Act a requirement of dismissal that the Act does not contain.

■ 4. The Secretary claims that the district court lacked the power to issue orders requiring a certain form of notice and creating a procedure for authoritative determination of class membership. The Secretary says that the orders interfere with her administration of the Act, are contrary to the Supreme Court's decision in *Heckler v. Day,* —— U.S. ——, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984), and are forbidden by a sentence in the new Act which says that after remand, "[t]he *Secretary* shall notify [an individual class member] by certified mail that he may request a review of" his disqualification. Pub.L. No. 98–460, *supra,* § 2(d) (emphasis added). In our view, however, the district court's orders are lawful for the following reasons.

First, it makes eminent practical sense to allow district courts in these particular class actions to enter procedural orders that will expedite resolution of the underlying controversy and carry out Congress's legislative objectives. Consider, for example, the main procedural order about which the Secretary here complains. The order arises out of the court's recognition that the Secretary will likely have to notify nearly all Massachusetts residents who were terminated after 1976 and tell them they *may* be entitled to reinstatement. Of the group notified, only *some* will have been affected by the "medical improvement" test (or the lack of it), and only this latter subgroup are properly class members. Obviously, there will be arguments in many cases about whether a particular individual is or is not a member of the subgroup. Speedy resolution is important, for class membership will generally carry with it the right to interim benefits pending HHS's ultimate decision about whether a claimant should or should not have been terminated under a "medical improvement" standard. *Id.* § 2(e). The district court's order provides an expeditious way to resolve these arguments: HHS is to make an initial decision about class membership within a day of receiving a claimant's request, the plaintiffs' counsel will be notified, the U.S. Attorney will be asked to help resolve disagreements, and court review may be obtained. The alternative is to allow HHS to decide the question of class membership in its own time, and then face a less orderly set of appeals. It seems to us that the court's procedure simply offers an administratively practical way, consistent with the court's broad and flexible powers under Fed.R.Civ.P. 23, to carry out the new Act's remand and redetermination requirements. *See* Fed.R.Civ.P. 23(d) ("[T]he court may make appropriate orders: 1) determining the course of proceedings or prescribing measures to prevent undue rep-

etition or complication ...; 2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action ...; 5) dealing with similar procedural matters.").

Second, we do not see how the procedural requirements or the notice requirements significantly interfere with the Secretary's ability to administer the Act. At most, the Secretary must reprogram her letter-writing computers so that they will send out a letter to Massachusetts residents somewhat different from the letter sent elsewhere. Telling a computer to write a different letter is normally quite an easy task. And, the Secretary shows us no reason to believe that this order presents any unusual difficulties.

Third, the court's reason for requiring a special notice is its belief that this notice— written by plaintiffs' counsel—is clear, while the Secretary's notice is bureaucratic "gobbledygook." We have read the two proposed notices, and we agree the court's choice is written in better, clearer, simpler English. It is more likely that its recipients will understand it. In the circumstances before us, a judicial decision that favors plain and direct English is a very reasonable one. *Cf. Fabula v. Buck*, 598 F.2d 869, 874 (4th Cir.1979) (directing district court to determine "the method of notice which is best calculated to reach the aged, blind, and disabled class members without imposing an unreasonable burden on" the defendant).

Fourth, the authority the Secretary cites is not on point. *Heckler v. Day, supra*, concerned judicial imposition of time limits upon an agency. The court held them unlawful not simply because of the burden they imposed, but also because of considerable legislative history suggesting Congress did not intend courts to impose them. We have uncovered no such legislative history here, and in any case, we do not see in the orders before us the creation of any great burden. Moreover, the language of

the new Act to which the Secretary points simply states that the Secretary shall send notice. It does not say the courts cannot also require notice or supervise its form. Nor does the new Act modify the express terms of Fed.R.Civ.P. 23(d)(2), enabling courts to order supplementary notice to class members where appropriate, "in such manner as the court may direct." And the heterogeneity of the different class actions with which Congress was concerned suggests that Congress would favor some judicial managerial efforts, provided they did not unreasonably burden HHS and were reasonably related to the "expeditious[ ]" administration of the Act's provisions. 130 Cong.Rec. H9828, *supra*.

Indeed, we are aware of at least two other district courts that have drafted special notices to be sent by the Secretary to class members, *see Lopez v. Heckler, supra; Holden v. Heckler, supra*, and several other district courts that have imposed other procedural requirements in effectuating remand under the new Act, *see Pickett v. Heckler, supra; Thomas v. Heckler, supra; Young v. Heckler*, No. 83–5321 (S.D. Ill. Nov. 16, 1984).

5. Finally, the nature of the argument in this case gives us some reason to believe the Secretary may vigorously oppose any further court orders, and there may be numerous legal arguments about points that, in our opinion, are relatively minor in the context of this litigation. For that reason, we state explicitly that insofar as Congress may have foreseen the need for some further judicial orders or supervision in order to carry out the 1984 Act's purposes, the power to make these orders and take actions is committed to the district courts, not courts of appeals. We imagine that a district court's decision will fall outside of its lawfully committed powers only in an unusual instance.

The decision of the district court is *affirmed*.