**Sam SAMUELS, et al., Plaintiffs,**

v.

**Margaret HECKLER and Herbert Brown, Defendants.**

**No. 82–2827–M.**

United States District Court,
W.D. Tennessee, W.D.

Aug. 19, 1986.

Donald Donati, Memphis, Tenn., Frank S. Bloch, Stephen F. Palevitz, Vanderbilt Legal Clinic, David Ettinger, Russell J. Overby, Legal Services of Middle Tennessee, Nashville, Tenn., Karen Dennis, Memphis Area Legal Services, Memphis, Tenn., for plaintiffs.

Lewis K. Wise, Susan Riley, Attys., Dept. of Justice, Civ. Div., Washington, D.C., W. Hickman Ewing, U.S. Atty., Memphis, Tenn., Frank J. Scanlon, Sr. Asst. Atty. Gen., Nashville, Tenn., for defendants.

## ORDER ON PENDING MOTIONS

McRAE, District Judge.

There are several motions presently before the Court in this class action consisting of persons who were either denied or terminated from disability benefits under Title II (Social Security) or Title XVI (Supplemental Security Income) of the Social Security Act. The defendants in this case are Margaret Heckler, Secretary of the Department of Health and Human Services (the Secretary) and Herbert Brown (Brown), Administrator of the Tennessee Disability Determination Section (TDDS). The Court will address each motion separately.

### A. Motions for Summary Judgment

The Court will first address the plaintiffs' and the defendants' Motions for Summary Judgment. Plaintiffs raise seven separate challenges to the policies or practices of the TDDS and/or Secretary Heckler. No material issues of fact are in dispute, and therefore the issues are ripe for adjudication. Each claim, along with any appropriate relief, will be discussed separately.

### 1. *General Background*

A full understanding of the issues in this case requires a familiarity with the way the Social Security Administration (SSA) determines disability and how appeals are handled.

Determinations of disability are made using a five-step "sequential evaluation process." At step one,

> the Secretary determines whether an individual is engaged in "substantial gainful activity"; if so, benefits are denied. If not, the Secretary determines whether the claimant's medical condition or impairment is "severe"; if found "not severe," benefits are denied. Third, the Secretary determines whether the claimant suffers from an impairment acknowledged to be so severe that the claimant is presumed to be incapable of pursuing any gainful activity. If so, then the claimant meets or equals the Listing of Impairments and benefits are awarded. However, if the claimant's impairment does not satisfy the Listing of Impairments, the fourth step requires the Secretary to determine whether the individual has a sufficient "residual functional capacity" (RFC) to perform his former work. If so, benefits are denied. If an individual still has not been ruled ineligible for benefits, the fifth step requires the Secretary to take into account the additional considerations of age, education, and past work experience to determine whether the individual is capable of performing any other work available in the economy.

*Mental Health Assn. of Minn. v. Heckler,* 720 F.2d 965, 969 (8th Cir.1983) (citations omitted). At the fifth step a chart (called a grid) is employed which, based on a given RFC, takes into account the claimant's age, education, and past work experience to determine whether jobs exist in the national economy which he can perform. This grid, based on RFC, is used to determine whether disability benefits are paid.

There are four levels of evaluation within the agency before an appeal to federal court will lie. The first two levels, the initial determination and reconsideration stages, are administered by the TDDS according to policy statements issued by the SSA. These policy statements are called Program Operation Manual System (POMS) directives and are binding upon the agency. A *de novo* hearing before an Administrative Law Judge (ALJ) and review by the Appeals Council are the latter two stages of review. To guide decisions at these levels, the Secretary issues Social Security Rulings (SSR's) which mirror the content of the corresponding POMS directives used at the preceding levels.

### 2. *Failure to Obtain Proper Medical Assessments*

■ As part of its duty to secure evidence necessary to make disability determinations, TDDS obtains medical reports from both consultative and treating physicians. 20 C.F.R. § 404.1614(a). By regulation, these reports are required to include a medical assessment of the claimant's ability to do such work-related activities as standing, walking, lifting, etc. 20 C.F.R. § 404.1513. This information is to be complete enough to allow TDDS to make a determination of the claimant's residual functional capacity (RFC). *Id.* At one time, physician assessments were directly relied upon to fix RFC; however, in 1982, it was announced that ability to work would thereafter be determined by non-examining state agency medical doctors (SAMD), who were more familiar with the proper criteria. Although this change in policy ended the direct role of examining doctors in setting the RFC, their assessment of the claimants' ability to function is still required by 20 C.F.R. § 404.1513 (above), and Social Security Rulings and POMS continue to "stress the importance of obtaining evidence from medical sources identified by the claimant." Defendants' Motion for Summary Judgment at p. 25. Contrary to the protestations of the defendants, plaintiffs do not challenge this change. Rather, plaintiffs only object to the response of TDDS.

In March 1982, TDDS began instructing its consulting physicians not only to refrain from making assessments of RFC, but also to exclude from their reports any comments on the claimant's abilities to walk,

lift, etc. Request for Admissions, Brown's Response to No. 1, p. 5. Nor was any effort made to obtain this information from treating physicians. This results in making the conclusions of the *non-examining* agency doctor the only evidence of a claimant's work abilities. Consequently, erroneous determinations of RFC are difficult to overturn since there is no substantial evidence to the contrary. Such practices clearly violate Social Security regulations and the affected class members are entitled to relief. On remand, defendant Brown shall obtain the medical assessments required by 20 C.F.R. § 404.1513 and 416.913 from all treating and consulting physicians from whom they obtain evidence.

### 3. *Failure to Obtain Consultative Examination from Treating Physicians*

■ Both Sixth Circuit law and SSA directives prefer reports from treating physicians over those of doctors merely consulted to examine a claimant for purposes of disability. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *Miracle v. Celebrezze*, 351 F.2d 361, 379 (6th Cir.1965); 20 C.F.R. §§ 404.1517, 416.917. When the evidence is not sufficient to make a determination, TDDS is directed to obtain further information from attending physicians, whenever possible. POMS 401.085.

Plaintiffs maintain that TDDS ignores these instructions and obtains supplemental information almost exclusively from consulting doctors. While admitting that treating physicians are rarely used, defendant Brown states that most such physicians lack the facilities to perform the necessary tests, or otherwise do not meet federal standards. Brown Deposition at pp. 98–100. However, he also admits that no inquiries are made to determine whether the qualifications of any particular doctor are inadequate. Although failure to meet federal standards is a legitimate excuse for using a non-attending physician, such a determination must not be made arbitrarily or simply out of a desire for expediency. The admissions of Director Brown make it clear that TDDS has not followed SSA directives. Therefore, on remand, the treating physi-cians of class members should be used for consultative examinations whenever possible, in accordance with POMS 401.085 and other applicable directives.

### 4. *Comparative Weight Afforded Opinions of Attending Physicians*

The plaintiffs contend that the defendants give insufficient weight to the medical reports of treating physicians, in violation of established, Sixth Circuit precedent. The parties agree that a treating physician's opinion is entitled to more weight than that of either an examining physician, consulted by the SSA, or of a non-examining, state agency medical doctor (SAMD). *See also, King v. Heckler*, 742 F.2d 968, 973 (6th Cir.1984); *Stamper v. Harris*, 650 F.2d 108, 111 (6th Cir.1981); *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). Pointing to Social Security Ruling (SSR) 82–48(c), which notes that greater weight should be given to treating physician's testimony, the Secretary argues that she is already in compliance with this Sixth Circuit law. If all levels of the TDDS are applying SSR 82–48(c), then the Secretary would be correct; however, it is clear that such is not the case. Administrator Brown has admitted that "DDS gives no greater weight to the reports of treating or attending physicians than it gives to the statements of other physicians." Plaintiff's First Request for Admissions (First RFA) No. 20, p. 41. TDDS employees at the initial and redetermination levels have no indication of the superior weight reports of treating physicians should receive. Indeed, it appears that in certain situations, it is actually TDDS policy to accept the opinions of non-examining SAMD's over those of treating doctors. First RFA No. 17, p. 44.

■ Treating physicians are neither entitled nor competent to make ultimate determinations of disability since such decisions rest on both medical and non-medical considerations. *King*, 742 F.2d 968. However, in situations where there are conflicting medical opinions as to the extent or severity of a claimant's *impairment,* the opinion of the treating physician, absent special circumstances, should prevail.

Only where there are serious questions as to: 1) the treating physician's qualifications, 2) the nature or duration of his relationship to the claimant, or 3) the sufficiency of the treating physician's medical data, would a different result lie. *King*, 742 F.2d at 973; *Montijo v. Secretary of Health and Human Services*, 729 F.2d 599, 602 (9th Cir.1984).

The plaintiffs have shown that injunctive relief is necessary. On remand, the opinions of treating physicians should be afforded the weight required by the Sixth Circuit precedent cited herein.

### 5. *Objective Evidence of the Severity of Pain*

■ Originally, plaintiffs sought to enjoin the Secretary from applying POMS 401.570 and the identical SSR–82–58; both established agency policy for the evaluations of pain. However, on August 1, 1985, in response to the Social Security Disability Benefits Reform Act of 1984, the defendant replaced the contested directives with ones the plaintiffs do not find objectionable. Although the original issue is now moot, plaintiffs still seek relief in the form of an order requiring the Secretary to reconsider her denial of benefits in light of these new standards. Such an order would be appropriate only if POMS 401.570 and SSR 82–58 were illegal when applied.

POMS 401.570 provided that complaints of pain would not be considered for purposes of determining disability unless there was both 1) objective proof of a medical condition capable of producing the pain, and 2) objective proof of the severity of the pain. Consequently, complaints of pain out of proportion to the diagnosed medical condition were ignored. The plaintiffs maintain that such a standard violated the established precedent of the Sixth Circuit. The Court agrees. This circuit has repeatedly recognized that pain may be intense enough to disable without objective medical evidence to establish its severity. *King v. Heckler*, 742 F.2d 968, 974–5 (6th Cir.1984); *Beavers v. Sec. of H.E.W.*, 577 F.2d 383, 386 (6th Cir.1978). The plaintiffs are therefore entitled to the relief sought. On remand defendants shall process plain-

tiffs' applications for disability benefits under standards consistent with the Sixth Circuit precedent cited herein.

### 6. *Consideration of the Combined Effect of Nonsevere Impairments*

■ The plaintiffs also attack the validity of the Secretary's decisions based on POMS 401.410 and its corresponding Social Security Ruling, SSR–82–55. These directives, which listed a number of impairments considered "nonsevere," stated that "[i]nasmuch as a nonsevere impairment is one which does not significantly limit basic work-related functions, neither will a combination of two or more such impairments." This policy was rescinded effective December 1, 1984. The defendants maintain that this rescision was made in response to changes made by the 1984 Disability Benefits Reform Act, and that their prior policy was legal. The Court disagrees. The plain wording of the Social Security Act itself undermines the defendants' arguments. In defining disability, it states that:

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment *or impairments* are of such severity that he is not only unable to do his previous work, but cannot … engage in any other kind of substitute gainful work.

42 U.S.C. § 423(d)(2)(A) (emphasis supplied); *See also, Johnson v. Heckler*, 593 F.Supp. 375, 381 (M.D.Ill.1984), aff'd 769 F.2d 1202, 1213–15 (7th Cir.1985). In addition, the rulings in this and other circuits make it clear that the combined effect of a claimant's multiple impairment must be considered in reaching a determination. *Mowery v. Heckler*, 771 F.2d 966, 971 (6th Cir.1985) (impairments in this Circuit must be viewed in combination); *Johnson v. Heckler*, 769 F.2d 1202, 1213–15 (7th Cir. 1985); *Allen v. Califano*, 613 F.2d 139, 147 (6th Cir.1980).

Because POMS 401.410 and SSR–82–55 violated the Social Security Act and the law of this Circuit, determinations based thereon must be reopened and reconsidered in light of the combined effect of nonsevere impairments.

7. *Individualized Assessments of the Severity of an Impairment and of Residual Functional Capacity (RFC)*

The plaintiffs next attack six of the Secretary's disability directives on the basis that they prevent an individualized assessment of each claimant's disability. It is clear that determinations of disability must be made on a case by case basis. *Heckler v. Campbell,* 461 U.S. 458, 467, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983); *Beavers v. Sec. of HEW,* 577 F.2d 383 (6th Cir.1979); *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978). The effect of a given impairment on a hypothetical "average man" is not sufficient since "different people can react in markedly different ways to the same injury." *Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir.1974); *Walston v. Gardner,* 381 F.2d 580 (6th Cir.1967).

■ Plaintiffs first attack POMS 401.410 and its corresponding SSR–82–55, which contain a list of twenty (20) impairments always considered nonsevere. However, in April of 1985, these directives were rescinded and replaced with standards which actually consider the degree an impairment interferes with a claimant's ability to work. Although the present standards are not objectionable, the Court recognizes that this change was of little benefit to affected class members denied benefits under the prior illegal standards. Therefore on remand, plaintiffs who were excluded from benefits due to a reliance on POMS 401.410 or SSR–82–55 shall have their cases redetermined under the new standards.

■ Plaintiffs next challenge POMS 401.545 and Informational Digest (ID) 82–5. These directives involve the determination of an applicant's residual functional capacity (RFC)—the level of work a claimant can perform in spite of his severe impairment. RFC is divided into five categories of work ability: sedentary, light, medium, heavy and very heavy. POMS 401.655, see Plaintiff Motion, n. 5 p. 147. Once RFC is determined, it is evaluated along with the claimant's age, education and work experience to reach an ultimate decision as to disability. The more limited the RFC, the more likely an applicant will be found disabled. The challenged directives, however, provide that a person with obstructive airway disease, who does not automatically qualify as disabled under the Listing of Impairments, (Step 3 of the sequential evaluation), is always precluded from receiving a RFC for sedentary work. Obviously these rules do not allow for the individualized assessment required by law and therefore are unacceptable. Claimants who were affected by these directives are entitled to a redetermination which includes an individualized assessment of their RFC.

■ Finally, plaintiffs attack POMS 401.-590 and SSR–82–51, which set RFC guidelines for sixteen (16) musculoskeletal and cardiovascular impairments. Plaintiffs maintain that these directives make required findings of RFC without assessing the claimant individually. The Court disagrees. RFC levels are cumulative; each succeeding level includes the ability to do work at the preceding level unless there are additional limiting factors. POMS 401.-655, Plaintiffs' Motion, FNS at pp. 147–48. Thus the ability to do heavy work generally includes the ability of perform sedentary, light and medium work as well. The guidelines challenged here are not objectionable since they only operate to exclude RFC levels at the upper ends of the scale.

POMS 401.590(b)(5), which the plaintiffs specifically challenge in their brief states:

> 5. Amputation of lower extremity at or above the tarsal region, but below the knee, with ability to use prothesis effectively. *Heavy work activity would be preluded. Usually* there is no significant restriction in the ability to walk or stand unless there is a complication of the amputation site. There would be a limitation on excessive climbing of stairs and walking on grossly uneven terrain and operating foot controls with the affected extremity.

(emphasis supplied.) It is clear that this POMS only precludes a claimant from being found fit to do heavy work. It therefore operates in his favor since it automatically prevents him from being considered for heavy work. This differs from the POMS previously discussed, which auto-

matically excluded claimants from the most favorable RFC rating. Moreover, these guidelines do not make standardized assessments of a claimant's remaining capacity. It is clear from the wording of (b)(5) and its companion sections that subjective differences are taken into account. In describing an individual's expected remaining ability, the directives speak in indefinite terms, using such words as "usually" (b)(5) or "ordinarily" (b)(10), or stating that consideration must be given to the way in which the impairment actually affects the claimant.

Because POMS 401.590 and SSR–82–51 do allow for an individualized assessment of the affect of the claimant's impairments, plaintiffs' Motion for Summary Judgment is denied and defendants' Motion for Summary Judgment is granted.

### 8. *Publication of POMS Directives in the Federal Register*

██ The plaintiffs next challenge the validity of several POMS directives on the basis that they are substantive rules requiring publication in the Federal Register. Only the validity of POMS 401.490 is at issue since the other challenged directives have either been rescinded by the SSA (POMS 401.410 and 401.570) or previously addressed and voided by the Court (401.-545).

██ Although the Administrative Procedures Act (APA) requires most rules to first be published in the Federal Register, it does make an exception for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). The defendants invoke this exception, maintaining that POMS 401.490 merely interprets the underlying regulation. The Court disagrees. Sections 20 C.F.R. 404.1546 and 416.946 (the identical SSR provision) state that RFC is to be determined by a state agency medical doctor (SAMD) based upon all available "medical evidence." In contrast, POMS 401.590 excludes a finding of certain RFC levels at the outset, no matter what the available medical evidence may show. The Court cannot say that this is merely an interpretation of the regulation. Unlike

cases which have found a rule interpretative, there is no word or phrase which is being more precisely defined by the agency. See, *American Postal Workers Union v. United State Postal Service,* 707 F.2d 548, 559 (D.C.Cir.1983) (interpreted the phrase "annual basic salary"); *Allen v. Bergland,* 661 F.2d 1001 (4th Cir.1981) (interpreting the word "income"). Therefore the Court finds that POMS 401.590 is void since, as a substantive rule, it was not published for notice and comment under 5 U.S.C. § 553. However, since the Court believes this POMS to have been beneficial to applicants, since it operated to automatically exclude claimants from less favorable RFC ratings, no injunctive relief will be ordered.

### 9. *Relief*

██ The Court has found that defendants have: 1) failed to obtain proper medical assessments of claimants' work-related abilities; 2) failed to obtain consultative examinations from treating physicians; 3) failed to place appropriate weight on the opinions of treating physicians; 4) employed standards which improperly required objective evidence of the severity of pain; 5) employed standards which improperly failed to consider the combined effects of nonsevere impairments; and 6) employed standards which failed to allow individualized assessments of RFC and of the actual severity of impairments. The Court has already stated that affected plaintiffs are entitled to new determinations based upon proper standards. *See Branham v. Gardner,* 383 F.2d 614, 626–27 (6th Cir. 1967).

Plaintiffs are also entitled to the following relief:

1) full retroactive benefits if the re-evaluation shows that benefits were improperly denied. *See Johnson v. Heckler,* 593 F.Supp. 375, 382 (N.D.Ill.1984) aff'd 769 F.2d 1202, 1215 (7th Cir.1985).

2) notification by certified mail informing class members both of their right to request a redetermination and their responsibility for making such a request within 120 days of receipt of their notice.

3) defendants shall issue written instructions to the affected personnel, informing them of the contents of this Court's order and instructing them on the procedures to be used in its implementation.

### B. Defendant's Motion to Remand and Dismiss

■ Also pending before the Court is the defendants' motion to remand and dismiss the claims of class members who were terminated from the disability rolls. Under the terms of the Agreed Order for Remand, the cases of terminated class members have recently been sent back to the Secretary for redetermination according to the medical improvement standards set forth by Congress in the Social Security Disability Benefits Act of 1984 (1984 Act). However, the defendants continue to seek the dismissal of all remanded claims, maintaining that such a result is mandated by the 1984 Act. The terminated plaintiffs oppose dismissal since they have raised other claims not related to medical improvement.

It is well settled that a court does not normally lose jurisdiction of remanded cases. *Avery v. Secretary of HHS,* 762 F.2d 158 (1st Cir.1985); *Zambrana v. Califano,* 651 F.2d 842, 844 (2d. Cir.1981). Likewise, "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1979). The portion of the 1984 Act which requires remand addresses medical improvement cases only; it does not speak to the plaintiffs' other claims. Presented with the same question, the First Circuit stated: "The conclusive answer to this argument, however, is that the act says the court shall "remand" the case; it does not say the court must dismiss the action." *Avery,* 762 F.2d at 163. *See also, Heckler v. Kuehner,* 469 U.S. 977, 105 S.Ct. 376, 83 L.Ed.2d 312 (1984) (the Court ignored an opportunity to dismiss and only remanded instead); *Lopez v. Heckler,* 753 F.2d 1464 (9th Cir.1985); *Holden v. Heckler,* 615 F.Supp. 682 (M.D.Ohio 1985).

Standards for redetermination should not vary according to whether the case was previously remanded. Absent pre-emption by Congress, the Court has a duty to award the same relief for each plaintiff. Therefore, on re-evaluation, the remanded cases shall be reviewed in light of both: 1) the new medical improvements standards embodied in the 1984 Act, and 2) the injunctive relief granted in response to the parties' motions for summary judgment.

### C. Motion to Decertify the Class

■ Also before the Court is defendants' Motion to Decertify the Class. The defendants argue that plaintiffs have met neither the commonality nor typicality requirements of Rule 23 and that the need for the class has been mooted by passage of the Social Security Disability Benefits Reform Act of 1984 (1984 Act). All of these contentions are without merit.

Two of the requirements for maintaining a class action are that there be "questions of law or fact common to the class" and that the "claims or defenses of the representative parties are typical of the claims and defenses of the class." *Fed.R.Civ.P.* 23(a)(2) and (3). The plaintiffs clearly meet both of these criteria. The plaintiffs claim that the policies and practices of the defendants have resulted in the wrongful denial or termination of class members' disability benefits. The admissions of defendant Brown and the policies of the defendant Heckler speak for themselves. The acts complained of were uniformly applied throughout Tennessee and this obviously raises common questions of law for the entire class.

The typicality requirement is also satisfied. The defendants complain that each of the named plaintiffs attack different rules or practices. However, this misses the point. Rule 23 requires that the claims of the class representatives be similar to those of the class members, not that the claims of the class representatives themselves be similar. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (the

class representatives must possess the same interest and suffer the same injury as the class). As the plaintiffs point out, defendants have confused the requirements for joinder with those for class action.

As a final justification for decertification, the defendants raise the 1984 Act. They claim that *"in large part,* Congress has mooted the class claims in this case." Defendants' Motion to Decertify at 4. However, this very statement exposes the fallacy of defendants' argument since it admits that the 1984 Act does not address *all* of the plaintiffs' claims. The plaintiffs' case has not been mooted.

The defendants' Motion to Decertify is denied.

### D. The Payment of Interim Benefits

The final controversy before the Court concerns the payment of interim benefits and stems from the plaintiff's "Notice" of December 23, 1985.

■ On December 13, 1985, the Court remanded all "medical improvement" claims to the Secretary for redeterminations pursuant to the Social Security Disability Benefits Reform Act of 1984 (1984 Act). The 1984 Act allows "any individual whose case is remanded" to elect to receive interim benefits "beginning with the month in which he makes such election," Sec. 2(e). On December 18, 1985, counsel for the plaintiffs made a blanket election for the class, thereby attempting to lock in December benefits for the class. The defendants object to this "protective filing date," maintaining that the 1984 Act requires individual class members, not the class action attorney, to make the election. The Court agrees.

Both the wording and the structure of the 1984 Act indicate Congress' intent to require individual claimants to make the election. The 1984 Act itself states that "Any *individual* ... may elect ... to have payments made beginning with the month in which *he* makes such election," Sec. 2(e) (emphasis supplied). Likewise, Sec. 2(d), which mandates the terms of the remand, requires the Secretary to notify each "individual" that he may request a review of the previous determination. Sec. 2(d)(4). Moreover, the Court is mindful that the very purpose of the remand was to end class action litigation on the subject of medical improvement. Congress intended each individual redetermination to be "regarded as a new decision." Sec. 2(d)(4). Continued orchestration by class attorneys is inconsistent with this goal.

■ In support of their position, plaintiffs' attorneys point to 20 C.F.R. § 404.630 and 416.340 which they claim "directly address the issue." Plaintiffs' Memorandum of January 17, 1986. These regulations adopt the date of filing as the date of application in cases where third parties have applied for benefits on behalf of another. However, these general regulations, which are apparently intended to apply only to the initial application process, 20 C.F.R. § 404.601, are in direct conflict with the specific terms of the 1984 Act. Under the plaintiffs' theory, 20 C.F.R. § 404.630(c) allows a claimant six (6) months following the protective filing of the class attorney to make his individual filing for benefits. However, the 1984 Act specifies that an individual has 120 days to request review after he has been notified of the remand. *See also,* 416.340(c) (requires submission of application within sixty (60) days). It is clear that these regulations were not designed to apply in this situation.

The defendant need only pay interim benefits from the month in which an individual's request is received.

### E. Conclusion

Plaintiff's Motion for Summary Judgment is granted in part and denied in part (see part A). Defendants' Motion to Dismiss and Motion for Decertification are denied (see parts B and C, respectively). Interim benefits need only be paid from the month an individual's request is received (see part D).

IT IS SO ORDERED.