929 F.2d 701
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Christine FLOYD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-5808.
 United States Court of Appeals, Sixth Circuit.
 April 1, 1991.
 
 On Appeal from the United States District Court for the Middle District of Tennessee, 85-00827, Marton, J.
 M.D.Tenn.
 AFFIRMED.
 Before RYAN and SUHRHEINRICH, Circuit Judges; and SILER, Chief District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Christine Floyd, wife of deceased claimant Roy Floyd, appeals the judgment of the district court affirming the Social Security Administration's decision to deny her husband disability benefits. Mrs. Floyd claims that substantial evidence does not support the decision and that the district court erred in refusing to remand to the agency for consideration of evidence of the cause of Mr. Floyd's death.
 
 
 2
 We conclude that the lower court's decision should be affirmed as substantial evidence supported the Administrative Law Judge's ("ALJ") decision and the evidence of Floyd's death is immaterial.
 
 I.
 
 3
 Roy Floyd applied for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. Secs. 401 et seq., in February 1984. Floyd was forty years old at the time of his hearing before the ALJ. His formal education was limited to a GED degree. He had worked as a boiler operator, tow motor operator, grocery store owner/operator, die press operator, and grinder operator. He had stopped working on January 6, 1984, when he was hospitalized for one day with complaints of chest and arm pain.
 
 
 4
 Floyd's disability claim was based on a heart condition, ulcers, alcohol dependency, dementia, generalized anxiety disorder, and dependent personality disorder. Floyd underwent coronary artery bypass surgery in 1979 after which he returned to work as a boiler operator. He experienced a second bypass in January 1984.
 
 
 5
 The Secretary denied Floyd's claim originally and on reconsideration. On September 18, 1984, Floyd and his attorney appeared before an ALJ. The ALJ denied Floyd's claim on January 16, 1985, finding that because Floyd had the residual functional capacity to perform sedentary work and because of his age and education, he was not disabled under the Act.
 
 
 6
 The Appeals Council refused to grant Floyd's request for review but, on November 8, 1985, the Appeals Council remanded the claim to the Secretary for reconsideration in light of the new mental impairment regulations. The Appeals Council's remand instructed the ALJ to obtain vocational testimony and additional psychological and medical assessments. The ALJ who had previously heard the case, after hearing the testimony of a vocational expert ("VE") and filing a psychiatric review technique form, once again denied Floyd's claim. The Appeals Council refused to adopt the ALJ's decision and instructed the ALJ to re-evaluate the claim pursuant to Samuels v. Heckler, 668 F.Supp. 656 (W.D.Tenn.1986), a class action challenging the Secretary's means of assessing disability, and to obtain an additional evaluation of Floyd's physical capacity. The Appeals Council further instructed the ALJ to hear additional vocational testimony if his finding continued to be that Floyd was limited to sedentary work.
 
 
 7
 On May 17, 1988, Floyd, his wife, and VE Dr. George Copple testified before the ALJ who had previously heard the case. Of the six doctors whose reports were before the ALJ, only one, Dr. Evelyn Frye, Ph.D., the psychologist who tested Floyd when he was hospitalized for alcohol abuse in 1985, stated that she believed Floyd satisfied the guidelines for social security disability status. Dr. Frye based her conclusions on three clinical interviews and extensive testing. These tests and interviews led Dr. Frye to conclude that Floyd suffered from severe alcohol dependency; chronic pattern of generalized anxiety disorder; atypical organic brain syndrome, secondary to chronic alcoholism; dependent personality disorder, and a mild learning disability. Dr. Frye also concluded that Floyd did not suffer from dementia.
 
 
 8
 Other psychological evaluations led to contrary conclusions. A psychological examination conducted in 1986 by Dr. Paul Lima, Ph.D., and Phillip Barkley, M.A., indicated that despite alcohol abuse, dementia, generalized anxiety disorder, and dependent personality disorder, Floyd could work. Dr. Lima noted that Floyd had remained completely sober for a year, reported no prior problems with work relationships and no current problems with interpersonal relationships, and had a fair to good ability to perform work-related mental activities.
 
 
 9
 Lima's and Barkley's findings were corroborated by psychiatrist Dr. Sandip Shukla who examined Floyd for the Secretary in 1986. Like Lima and Barkley, Shukla felt that Floyd had a fair ability to deal with work stresses, function independently, and maintain attention and concentration. He also found that Floyd's depression could inhibit, but not preclude, Floyd's ability to work because of its effect on his ability to act predictably and reliably.
 
 
 10
 In addition to the psychological evidence, Floyd's physicians, despite concerns about damage to Floyd's myocardium, concluded that he was not disabled by his physical limitations. In the months following the second bypass surgery, Dr. Frist, Floyd's cardiac surgeon, reported that Floyd could tolerate light activities without shortness of breath and that there was no overt evidence of congestive failure. Dr. Rudd, Floyd's internist and principal treating physician since 1984, advised that Floyd could return to work full time within six months of his second coronary bypass. Dr. Rudd's medical assessments consistently indicated that Floyd's ability to lift, stand, walk, and handle objects allowed him to perform sedentary or light work. Dr. Rudd believed that Floyd's anxiety, pain, and shortness of breath were relieved by medication. His associate, Dr. Bullock, agreed that Floyd could perform sedentary work. Neurologist Dr. Calvin Calhoun found that Floyd suffered from no neurological impairment and that the only limitations on his ability to work were caused by his heart condition.
 
 
 11
 The ALJ also heard testimony from Floyd and his wife regarding his impairments and activities. Floyd testified that he walked around his yard and performed light chores in a small storage building in his backyard. He occasionally helped wash the clothes and dishes. He awoke frequently during the night and was "worn out" in the morning. His legs bothered him if he sat in the same position for a long period of time. He also testified that he felt good mentally most of the time and could handle pressure--his use of nitroglycerin was not stress related. His wife corroborated this testimony.
 
 
 12
 On May 27, 1988, the ALJ issued his recommended decision once again denying benefits. The ALJ found that the medical evidence established that Floyd
 
 
 13
 had severe limitations due to a history of heart disease with two coronary artery bypass surgeries, a mild emotional problem, a history of alcohol abuse without evidence of continuing limitations, a history of hiatal hernia controllable by diet, and a history of bursitis of the shoulder which is compensable with medication, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
 
 
 14
 The ALJ further found that Floyd was unable to perform his past work but that his residual functional capacity allowed him to perform light work reduced only by his inability to tolerate work-related stress. The ALJ found that Floyd's limitations would allow him to work at a significant number of jobs in the national economy: cashier, stationary or gate guard, and security alarm system monitor. The Appeals Council accepted the ALJ's recommendation on November 3, 1988.
 
 
 15
 The district court, adopting the report and recommendation of the magistrate, granted the Secretary summary judgment and dismissed the civil action on December 21, 1989.
 
 
 16
 On October 6, 1989, during the pendency of this suit, Floyd died. His wife, Christine Floyd, was substituted as plaintiff in an effort to amend the Magistrate's Report and Recommendation pursuant to Fed.R.Civ.P. 59. The district court denied this motion.
 
 II.
 A. Applicable Law
 
 17
 The plaintiff has the burden of establishing disability by a preponderance of the evidence. Bloch v. Richardson, 438 F.2d 1181 (6th Cir.1971). Once a plaintiff establishes a prima facie case that he cannot perform his prior relevant employment, the burden shifts to the Secretary to show that he can perform other substantial gainful employment which exists in the national economy. Allen v. Califano, 613 F.2d 139 (6th Cir.1980). To rebut this prima facie case, the Secretary must come forward with proof that the plaintiff, considering his age, education, and background, can perform the requirements of specific jobs in the economy. O'Banner v. Secretary of Health, Educ. and Welfare, 587 F.2d 321 (6th Cir.1978). When the plaintiff's background and characteristics conform to the grid's provisions, the Secretary can rely on vocational guidelines to overcome the plaintiff's prima facie case. Kirk v. Secretary of Health & Human Servs., 667 F.2d 524 (6th Cir.1981). The Secretary's findings must be based on substantial evidence. Id.
 
 B. Standard of Review
 
 18
 Findings of fact by the Secretary must be accepted by reviewing courts as conclusive if supported by substantial evidence. 42 U.S.C. Sec. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the record as a whole shows substantial evidence supports the Secretary's decision, the decision must be affirmed regardless of whether some evidence also supports the plaintiff's claim, Crisp v. Secretary of Health and Human Servs., 790 F.2d 450, 453 n. 4 (6th Cir.1986), and regardless of whether the court, as trier of fact, would have decided the case differently, Elkins v. Secretary of Health and Human Servs., 658 F.2d 437, 439 (6th Cir.1981).
 
 C. Substantiality of the Evidence
 
 19
 The ALJ concluded that Floyd had experienced two coronary artery bypass surgeries, and had suffered from alcohol abuse, which was in remission, mild anxiety, depression, and bursitis of the shoulder, which was remediated by medication. He found, however, that the medical assessment by Floyd's treating physician, Dr. John Rudd, indicated that these impairments still allowed him to perform sedentary to light work activity. Based on this medical assessment, Floyd's I.Q. of 75, and his "fair" ability to tolerate work-related stress, the VE testified that Floyd could perform sedentary jobs existing in the local economy such as cashier, stationary or gate guard, and security alarm system monitor. Thus, the ALJ found that Floyd was not disabled because he could perform a significant number of existing jobs.
 
 
 20
 Floyd contends that substantial evidence does not support the ALJ's decision because the ALJ, in his questions to the VE, did not fully describe Floyd's impairments and the VE's responses improperly commented upon the medical evidence. Although we agree that the ALJ's questions lacked sufficient detail, this was harmless error because Floyd's counsel provided detailed hypotheticals to the VE which allowed the VE to explain how the various alleged ailments could affect Floyd's ability to perform particular jobs. See Vocational Testimony, Testifying at Disability Hearings: A Self-Study Guide, June 1987, SSA Pub. No. 70-009 at page 21. The VE's improper comments on the medical evidence also do not affect the validity of the ALJ's decision because the ALJ did not seem to credit this improper testimony and instead relied on the sufficient evidence provided by the medical testimony.
 
 
 21
 Substantial medical evidence supports the ALJ's conclusion that Floyd could perform light or sedentary work existing in the national economy. Sedentary work is defined as follows:
 
 
 22
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 23
 20 C.F.R. Sec. 404.1567(a). The regulations, in relevant part, define light work as:
 
 
 24
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.
 
 
 25
 20 C.F.R. Sec. 404.1567(b).
 
 
 26
 In reaching the conclusion that Floyd could perform light or sedentary work, the ALJ relied on the medical assessment of Dr. Rudd, Floyd's principal treating physician since Floyd's 1984 surgery and the beginning of his disability claim. Such reliance on opinions and medical assessments of treating physicians is proper under the regulations. See Samuels v. Heckler, 668 F.Supp. 656 (W.D.Tenn.1986); Allen v. Califano, 613 F.2d 139 (6th Cir.1980). Reviewing Dr. Rudd's most recent assessments, the ALJ noted that Dr. Rudd's assessment was consistent with the capacity for sedentary to light work: ability to use both hands for repetitive action; the ability to sit eight hours per day, three hours at a time; the ability to stand six hours per day, three hours at a time; the ability to walk four hours per day, four hours at a time; and the ability to lift twenty-one to twenty-five pounds occasionally and sixteen to twenty pounds frequently. A February 1988 report by Dr. Rudd indicated that Floyd's condition remained stable and was possibly improving. Dr. Rudd further noted that Floyd was not limited in standing, walking or sitting and thus might be capable of a full range of light work.
 
 
 27
 The ALJ also considered Floyd's testimony that he had bursitis and tendonitis of his arm, chronic pain in his elbow, osteoarthritis, a heart condition requiring the use of nitroglycerine, a history of two heart surgeries, and alcoholism and that he felt too weak to work. Floyd further testified that a walk of 75-100 yards totally wore him out and that walking that distance to the hearing was so difficult that he needed to take a nitroglycerin tablet. He also testified that he has not felt well for five straight hours since his second coronary bypass in 1984, and must return to bed shortly after awakening. Floyd continued treatment for alcohol abuse but had not had a drink in three years. Floyd also testified that he walks around outside and "piddles around" but cannot perform strenuous household chores such as cooking. The testimony of his wife, Christine Floyd, supported his testimony.
 
 
 28
 Despite Floyd's testimony of poor health, the ALJ noted that the opinion of his treating physician indicated that Floyd's condition was stable, if not improving. Dr. Rudd's notes indicate that Floyd had not complained of chest pain and that the conservative treatment previously pursued, injections, medications, and diet, did not need to be altered. The ALJ who heard the testimony of the claimant explained his grounds for not crediting Floyd's testimony and, thus, the ALJ's credibility findings should not be lightly disregarded. Houston v. Secretary of Health & Human Servs., 736 F.2d 365 (6th Cir.1984).
 
 
 29
 In reaching his conclusion, the ALJ did not devote much attention to the psychological reports indicating dementia, dependence disorder, alcoholism, and depression. None of the psychologists, however, found that these ailments prevented claimant from working where the work did not involve high stress and complicated, detailed instructions. The questions posed to the VE by the claimant's counsel reflected the psychologist's reports and concerns, thus the VE considered this evidence and found that Floyd's limitations would not prevent him from functioning as a gate guard, security system monitor, or cashier. Mr. Floyd's own testimony that his alcoholism was under control, that he would work if he could, and that he did not feel that he had problems handling stress or working with people also indicate that his psychological problems did not affect his ability to perform substantial gainful activity. Substantial evidence, then, supported the ALJ's decision, despite the fact that the ALJ did not specifically comment on the psychological evidence.
 
 D. Significance of Floyd's Death
 
 30
 The district court denied Floyd's motion to amend the Secretary's decision based on the death of her husband due to heart failure during the pendency of the suit.
 
 
 31
 Judicial review of administrative decisions is limited to the administrative record. Parks v. Harris, 614 F.2d 83, 84 (5th Cir.1980). A court may, however, remand the case to the Secretary to consider material new evidence. 42 U.S.C. Sec. 405(g). A subsequent death does not constitute material new evidence. As the court explained in another case where a social security claimant, with a history of a heart condition, died after the final decision denying benefits and long after the last date of insured benefits, the plaintiff's death
 
 
 32
 does not warrant a remand. The Secretary has already considered plaintiff's arteriosclerotic heart condition, and the fact that plaintiff died of a second heart attack almost ten years after his first one and more than one year after he last met the earnings requirements of the Act is not probative of disability in this case.
 
 
 33
 Schad v. Finch, 303 F.Supp. 595, 598-99 (W.D.Penn.1969). The only issue in this case was whether Floyd's heart condition, in combination with other impairments, prevented him from performing work which existed in the national economy. His death in 1989, a year after the ALJ's decision, does not show that Floyd could not have worked at the time of the hearing. The district judge, then, did not abuse his discretion in refusing to remand to consider this additional evidence.
 
 III.
 
 34
 For the reasons set forth above, we AFFIRM the district court's decision.
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., Chief United States District Judge for the Eastern District of Kentucky, sitting by designation