Palmer v. Secretary HHS                    CV-92-264-B    07/06/93

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Armand Palmer

    v.                                        Civil No. 92-264-B

Secretary of Health and Human Services


**O R D E R**


In this action, Armand Palmer ("claimant") seeks review of a final determination by the defendant Secretary of Health and Human Services ("Secretary"), denying his application for Social Security disability benefits.  This court has jurisdiction pursuant to 42 U.S.C.A. § 405(g) (West Supp. 1993).[1]  Currently before the court are Plaintiff's Motion for Remand and

_____

[1]Section 405(g) of Title 42 provides, in relevant part, as follows:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.  The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Defendant's Motion for an Order Affirming the Decision of the Secretary.

## I.  BACKGROUND

Claimant was born on August 16, 1948, and currently resides in Manchester, New Hampshire.  Transcript ("Tr.") 43-44, 147.  He has a seventh grade education, Tr. 45, 173, and has worked as a stock clerk, a laborer, and a custodian.  See Tr. 45-55, 173, 282-83.  Claimant seeks disability benefits "from November 2, 1975 up through and including the present date . . . ."  Complaint ¶ III.  He alleges that back injuries have prevented him from performing substantial gainful activity during this period.  Id.

A.  Medical History

Claimant states that he injured his back while at work for the Manchester Highway Department in 1971 and underwent a laminectomy for disc excision.  Tr. 55, 198.  He returned to work and reinjured his back in July 1974 while lifting a filing cabinet.  Tr. 55-56, 198.  He underwent surgery in November 1974 for excision of a herniated lumbar disc.  Tr. 201.  Claimant's treating physician, Dr. Donald L. Cusson, wrote in October 1975 that

2

> [claimant] does have restrictions for
> lifting, because he had had two previous
> injuries and [his] back cannot tolerate any
> lifting beyond 20-25 pounds, nor repeated
> lifting or any strenuous pushing or pulling.
> However, I feel that he can be cross-trained
> in his intellectual capacities, to do menial
> tasks within these intellectual capacities.

Tr. 203. Dr. Cusson's notes from 1976-80 reveal, among other things, that (1) although claimant complained of back pain, his condition remained relatively the same with no evidence of muscle spasms; (2) his straight leg raising was negative to 90 degrees; (3) he complained of numbness in his feet and some weakness in his legs; but (4) his x-rays were negative. Tr. 204-11.

In May 1976, a psychologist at the New Hampshire Hospital examined claimant and noted that the results of a neuropsychological evaluation indicated that there was some decreased functioning in claimant's left hemisphere due to a closed head injury he suffered in 1965. Tr. 221-23. The report, however, concluded:

> Results of projective assessments indicate
> that [claimant] is a depressed man who is
> hypochondriacal and has a tendency toward
> working his problems out in a hysterical
> symptomology. His depression is restrictive
> and results in a poor image. Individual
> therapy and marriage counseling are in order.
> In so far as [claimant] agreed to the
> neurological evaluation rapport was good.
> His decision to refuse to continue with any

3

> further treatment at the Neurology Unit was based entirely on his assessment that his major problem was his back injury and that that was not being treated here.

Tr. 222-23. One month later, in June 1976, claimant was involved in an automobile accident and suffered some cerebral contusions as well as a bruise to the right knee, a strain of the cervical spine, and an aggravation of his back injury. Tr. 227-28.

On November 7, 1978, Dr. Charles Detwiler, an orthopedic surgeon, performed a consultative examination on claimant. Tr. 237-38. Dr. Detwiler made the following observations:

> [The physical examination] showed that the [claimant] walked with a normal gait. He could walk on his heels and toes well. There is a well healed scar in the low midline area of his back. He could forward flex to within six inches of the floor. He could extend 20 degrees and laterally rotate to 20 degrees. . . . There is no motor or sensory deficit present in either leg. The Flip Test was negative as was the straight leg raising test to 80 degrees. . . .

Tr. 237. X-rays of the lumber spine were interpreted as showing some disc degeneration at the level of L4-5 and L5-S1. Tr. 238. Dr. Detwiler offered a diagnostic impression that the claimant had "persistent low back pain secondary to abnormal bowel mechanics following removal of two discs . . . ." He concluded:

4

> I think that it is very good that [claimant]
> has returned to school to try to obtain his
> high school diploma.  I certainly do not
> believe that he could do any type of
> sedentary or standing work at this time.
> Obviously, due to his back pain he cannot do
> any lifting, stooping, bending, kneeling etc.

Tr. 238.

On April 29, 1980, Dr. William Rix, an orthopedic surgeon, examined claimant and found him to be

> a thirty-one year old male who looks his
> stated age, has a normal gait, and wears a
> metal back brace.  He has 90 [degrees] of
> forward flexion of his spine and a well-
> healed lumber incision.  He has full flexion,
> full extension, and full lateral bends.  He
> undresses himself slowly but deliberately.
> Straight leg-raising is 75 [degrees]
> bilaterally with tightness in the hamstrings
> at the extremes. . . .  He has a full range
> of motion of both hips.  He has greater than
> 90 [degrees] of straight leg raising in the
> sitting position.  He can walk on his toes
> and his heels and can do a full squat without
> problems.

Tr. 240-41.  Dr. Rix's impression was that claimant suffered from residual lumbar radiculopathy, which "is probably secondary to nerve root adhesions" following disc surgery.  Tr. 241.  Dr. Rix discovered no evidence of an acute ruptured disc nor any signs of acute nerve root tension, and he found x-rays of claimant's lumbar spine to be normal.  Tr. 241.  He concluded that claimant

5

was partially, not totally, disabled and recommended that claimant

> not go back to work as a laborer . . . .
> His main complaint centers around driving to
> and from his present job as well as sitting
> so long at work in one position. Work as an
> electronic technician seems appropriate as
> long as he can get up and move about any time
> he chooses. Work in sales might also be fine
> for him; perhaps the commuting problem could
> be alleviated by sharing a ride with someone
> else.

Tr. 241. Dr. Rix found claimant to be unhappy and added that "[i]t is well known that when one is feeling down, physical pain is intensified." Tr. 241. He suggested that claimant participate in a physical therapy program. Tr. 241.

In August 1980, Dr. Paul Corcoran, a rehabilitation medicine consultant, examined claimant and agreed with Dr. Rix that claimant would benefit from physical therapy. Tr. 243-44. Dr. Corcoran added that claimant "should avoid work which involves physically heavy labor, lifting, or prolonged sitting or standing in one position."[2] Tr. 244.

---

[2]On July 13, 1989, Dr. Burton Nault, a medical consultant to the Disability Determination Services, reviewed the existing medical record and offered an assessment of claimant's residual functional capacity as of December 31, 1980. Tr. 149-51. Dr. Nault noted that although claimant continued to experience low back pain, his condition "responded reasonably well to low back

B.  Procedural History

On June 20, 1989, claimant filed an application for disability insurance benefits.  The claim initially was denied on July 18, 1989, and a request for reconsideration was filed on August 16, 1989.  Tr. 156.  The request for reconsideration was denied on September 21, 1989.  Tr. 164.  Claimant requested a hearing, Tr. 166, which was held before an Administrative Law Judge ("ALJ") on January 18, 1990.  Tr. 36-88.  The ALJ considered the case de novo and issued a decision on June 18, 1990, finding that the claimant was not under a disability.  Tr. 331.  Claimant then filed a timely request for review.  Tr. 332. The Appeals Council vacated the hearing decision and remanded the case to the ALJ to "obtain the testimony of a vocational expert to determine if occupations exist within the claimant's residual functional capacity on or before December 31, 1980, the date the

---

brace . . . ."  Tr. 151.  He added that claimant could (1) lift and/or carry ten pounds frequently, with a maximum capacity of twenty pounds, and (2) stand, walk, or sit for approximately six hours, respectively, per eight hour day.  Tr. 149.  Although he found that claimant was limited in his ability to perform the pushing and pulling of hand and foot controls, Dr. Nault stated that claimant possessed "a light work capacity, without repetitive bending and lifting."  Tr. 149, 151.  Similar findings were rendered by Dr. A. Craig Campbell, another medical consultant to the Disability Determination Services, on September 15, 1989.  Tr. 160-61.

7

special requirements were last met."  Tr. 339.

The ALJ, on remand, held a supplemental hearing on May 28, 1991, and heard testimony from claimant and a vocational expert.[3] Tr. 89-143.  After evaluating the documents identified in the record and considering the testimony and the arguments presented, the ALJ rendered his decision on July 26, 1991, denying claimant's application for disability benefits.  Tr. 16-24.

At the outset, the ALJ noted that

> [t]he general issue to be determined is whether the claimant is disabled, and if so, when that disability began and the duration thereof. . . .  A five-step sequential evaluation process for assessing allegations of disability is outlined . . . at 20 CFR 404.1520.  In addition, [I] must consider allegations of pain in light of Social Security Ruling 88-13 and . . . <u>Avery v. Secretary of Health and Human Services</u>, 762 F.2d 158 (1st Cir. 1986).[4]

Tr. 15-16.[5]  The ALJ then reviewed the record and made the

_____

[3]The vocational expert stated that there were jobs available for a person within claimant's hypothetical restrictions.  Tr. 116-40.

[4]Although the ALJ's cite to the <u>Avery</u> case was incorrect, it is clear that he assessed claimant's allegations of pain in accordance with <u>Avery v. Secretary of Health & Human Services</u>, 797 F.2d 19 (1st Cir. 1986).

[5]Pursuant to 20 C.F.R. § 404.1520, the following five steps must be considered when evaluating whether a claimant is

8

following observations:

(1)   claimant met the disability insured status requirements on November 2, 1975, the date he claimed he became unable to work, and continued to meet these requirements through December 31, 1980;

(2)   claimant has not engaged in substantial gainful activity since November 2, 1975;

(3)   the medical evidence reveals that claimant does have a severe impairment as defined in 20 C.F.R. 404.1521, but that he does not have an impairment or combination of impairments listed in, or medically equivalent to, one listed in Appendix 1, Subpart P, Regulations No. 4;

---

disabled:

(1) whether claimant presently is engaged in substantial gainful activity;

(2) whether claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents claimant from performing past relevant work;

(5) whether the impairment prevents claimant from doing any other work.

(4)     claimant's residual functional capacity would not have
        allowed him to return to his past relevant work as a
        stock clerk;

(5)     claimant's testimony concerning his subjective
complaints of pain prior to December 31, 1980 were not
        completely credible in light of his daily activities,
        the nature of his pain, and the treatment record;[6]

---

[6]At the January 18, 1990, and May 28, 1991 administrative
hearings, claimant testified as to his personal history, Tr. 43-
45, medical history, Tr. 54-57, past relevant work experience,
Tr. 45-49, 50-52, 94-105, 107-10, subjective symptomatology, Tr.
58-59, 61-65, 67-70, 112-14, and daily activities and functional
capacities. Tr. 73-77. Claimant alleged that he suffered pain
which interfered with his ability to work. Tr. 55-57. Claimant,
however, stated that, even prior to the date of his last insured
status, he was cooking, cleaning, attending night school, driving
short distances to visit relatives, camping in a mobile home, as
well as taking his daughters to and from school. Tr. 67-81, 172.
This testimony prompted the ALJ to note:

> The claimant's daily activities were
> indicative of an individual who was not
> totally disabled. . . . Throughout the
> period from 1975 through 1980 the claimant
> was treated conservatively. During that time
> he did not even seek regular ongoing
> treatment that would indicate totally
> disabling pain. If the claimant's pain was
> so severe he should have been seeking further
> treatment. It is hard to understand an
> individual who complains of totally disabling
> pain, and yet does not participate in a
> physical therapy program until five years
> after his last surgery. . . .
>
> In view of the lapse of time between
> claimant's hearing and last insured date, [I]
> give[] more credence to the complaints of
> this claimant to [his] attending physician

10

(6)    prior to December 31, 1980, claimant had the residual functional capacity to perform the physical exertion and nonexertion requirements of work except for lifting over ten pounds and prolonged periods of sitting, standing, or walking, as well as work requiring bending;

(7)    claimant's treating physician, Dr. Cusson, indicated that his functional abilities were such that he could perform light work activity; Dr. Detwiler's statement is not one of total disability, but only that claimant would be limited in his ability to sit for prolonged periods of time; Dr. Rix and Dr. Corcoran, in addition to Dr. Cusson, found that claimant could perform a limited range of work activity;[7]

(8)    although claimant's nonexertional limitations did not allow him to perform the full range of sedentary work prior to December 31, 1980, there were a significant number of jobs in the national economy, including food and beverage clerk, retail order clerk, and cashier, which he could have performed.

Tr. 16-24.

Claimant filed a request for further review with the Appeals Council. The Appeals Council denied claimant's request on April

---

during the applicable period, rather than to testimony some 10 years post last insured entitlement.

Tr. 19-20. The ALJ added that "claimant did not evidence abnormalities to such an extent that he was recommended for further surgery." Tr. 20.

[7]The ALJ added that "[u]nder applicable rules, the weight to be given attending physicians' statements of disability deserve far more weight than a single consultative examination." Tr. 21.

11

2, 1992, Tr. 5-6, making the ALJ's decision the final decision of the Secretary. Claimant filed this suit on June 4, 1992.

## II. DISCUSSION

The sole basis for claimant's motion for remand is his argument that the ALJ failed to apply revised regulations regarding the evaluation of medical opinions and subjective pain complaints. 20 C.F.R. §§ 404.1527, 404.1529. The revised regulations upon which the claimant relies became effective after the ALJ's decision. See 50 Fed. Reg. 57,927 (1991); 50 Fed. Reg. 36, 932 (1991). Nevertheless, claimant argues that a remand is warranted because the regulations must be applied retroactively. See, e.g., Thomas v. Sullivan, 801 F. Supp. 65, 72 (N.D. Ill. 1992); Black v. Sullivan, 793 F. Supp. 45, 46-47 (D.R.I. 1992).

When the revised regulations were promulgated, the Secretary took the position that the revised regulations were a clarification of existing policies that did not effect any substantive changes in existing law. See 56 Fed. reg. at 36,934 ("[i]n the preamble to the Notice of Proposed Rulemaking, we noted that the Senate Finance Committee had indicated in its report . . . that it did not intend to alter in any way the relative weight that the Secretary places on treating physicians

12

and from physicians who perform consultative examinations"); 56 Fed. Reg. at 57,928 ("[b]ecause the statutory standard codified earlier Social Security policies for evaluating pain and other symptoms, and because the regulatory amendment expressly adopts and incorporates those same policies, these final rules make no substantive change in our policy"). If the Secretary was correct in this determination, the ALJ's failure to apply the new regulations, even if incorrect, would be harmless error not warranting a remand for further consideration. Cf. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

Moreover, the Secretary, in opposing claimant's motion for remand correctly observes that the claimant has made only a conclusory statement that the ALJ's decision is deficient under the new regulations. Without further supporting information and argument from the claimant, I will not attempt to guess at how the application of the revised regulations might have affected the ALJ's decision.

The resolution of the retroactivity question the claimant presents in all likelihood would require the resolution of a conflict between two recent Supreme Court decisions regarding the retroactivity of statutes and regulations. See Kaiser Aluminum &

13

Chemical Corp. v. Bonjorno, 110 S. Ct. 1570, 1579 (1990) (Scalia, J., concurring) (criticizing the majority for not resolving the conflict between two recent cases holding that unless there is specific indication to the contrary a new statute should be applied retroactively absent "manifest injustice," Bradley v. Richmond School Bd., 416 U.S. 696, 716 (1974); Thorpe v. Housing Auth. of Durham, 393 U.S. 268, 282 (1969), and cases saying that unless there is specific indication to the contrary a new statue should only be applied prospectively, e.g., Bowen v. Georgetown Univ. Hosp., 109 S. Ct. 468, 471 (1988)). Because claimant has failed to demonstrate that he would be entitled to a different result on remand if I resolved the retroactivity question in his favor, I find that the resolution of this question is unnecessary.

### III. CONCLUSION

Plaintiff's Motion for Remand is denied. The Secretary's Motion for an Order Affirming the Decision of the Secretary is granted. Accordingly, the final decision of the Secretary is affirmed.

14

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

July 6, 1993

cc:  Raymond J. Kelly, Esq.
     Gretchen Leah Witt, Esq.